[No. 19426.    In Bank.—September 10, 1894.]

## COUNTY OF SAN LUIS OBISPO, RESPONDENT, v. J. M. FELTS ET AL., APPELLANTS.

COUNTIES—ASSESSORS—PERCENTAGE FOR COLLECTING POLL TAXES—CONSTITUTIONAL LAW.—The provisions of the Political Code and of the County Government Act authorizing county assessors to retain, as their compensation for their services in collecting, fifteen per cent of all poll taxes collected by them, are not, as to the state poll tax, in conflict with either section 12 of article XIII of the constitution, providing that the poll tax "shall be paid into the state school fund," or with section 6 of article IX, providing that the "entire revenue derived from the state school fund and the state school tax shall be applied exclusively to the support of primary and grammar schools."

ID.—SUPPORT OF SCHOOLS.—The force of the word "exclusively," as used in section 6 of article IX of the constitution, is directed to the point that the state school funds must only be applied to the support of primary and grammar schools, to the exclusion of the other classes of schools which may be established by the legislature, or by municipal or district authority.

ID.—REPEAL OF SECTION 4334 OF POLITICAL CODE.—The County Government Act of March 31, 1891, which took effect upon the date of its passage, and which, by section 216, authorized county assessors to retain fifteen per cent of all amounts collected by them for poll taxes, operated to render nugatory, so far as such percentage is concerned, the provisions of section 4334 of the Political Code, which was passed on March 10, 1891, but which did not go into effect until sixty days thereafter, requiring salaried county officers to pay over to the treasurer all fees collected by them.

ID.—STATE POLL TAXES.—Prior to the amendment of section 2652 of the Political Code, which took effect in January, 1893, the county assessors were entitled to receive fifteen per cent of all amounts collected by them for poll taxes. By that amendment, the duty of collecting road poll taxes was taken from the road overseer and transferred to the assessor. *Held*, That assessors who had been elected to office at the time of the amendment were entitled to receive the percentage on the amount collected by them for road poll taxes, and that the amendment did not operate to increase their compensation within the prohibition of section 9 of article XI of the constitution.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The defendant Felts entered into the office of assessor of the county of San Luis Obispo on the fifth day of January, 1891. The state poll taxes mentioned in the opinion were collected and received by him between the

9th of October, 1891, and the 30th of September, 1893. The road poll taxes were collected and received between the 6th of March and the 30th of September, 1893. The further facts are stated in the opinion of the court.

*Wilcoxon & Bouldin, J. M. Wilcoxon,* and *E. P. Unangst,* for Appellants.

*Dudley & Buck,* and *H. A. Barclay, amici curiæ,* for Assessors of various counties.

In investigating the legislative policy in reference to state poll taxes, their collection and the compensation allowed assessors, it is unnecessary to go back further than the codes. Section 3839 of the Political Code provided for the tax, and with two amendments made in 1874 and 1880 the section has been practically unchanged. Section 3862 of the same code, provides: " The assessor, for services rendered in the collection of poll taxes, shall receive the sum of fifteen per cent." This section, although amended in 1874 and 1878, has always retained the words quoted, and the same provision is made for compensation in section 1857. The County Government Bill, in each enactment, makes the same allowance to the assessor. (Stats. 1883, sec. 164, p. 361; Stats. 1885, sec. 164, p. 125; Stats. 1887, sec. 211, p. 207; Stats. 1889, sec. 211, p. 300; Stats. 1891, sec. 216, p. 416; Stats. 1893, sec. 216, p. 507.) This court has decided that he had a right to retain the amount of six per cent on all personal property taxes collected by him, under the sections of the County Government Act cited, and as the allowance for fees for the collection of poll taxes is, in each instance, made in the same section, it would necessarily follow that he had a right to retain that also. (*San Mateo County* v. *Maloney,* 71 Cal. 205, 208.) Road poll taxes were provided for upon the adoption of the codes (Pol. Code, sec. 2652), and boards of supervisors given power to levy the same, and were to be collected in the same manner as state poll taxes. The section cited was amended in 1891 (Stats. 1891, p. 478), but not

changed in any particular affecting the question under discussion. The different county government acts above cited provided that the assessor should have his compensation " *on all amounts collected by him for poll taxes,*" and was unchanged until 1893 (Stats. 1893, p. 507), when it was provided that he should have his compensation " on all amounts collected by him for poll taxes *and road poll taxes,*" the italicized words being added, no doubt, to prevent any misconception and obviate all question as to the meaning of the words "poll taxes." The manifest object, the settled policy, and uniformity of the legislation on the subject, seems to leave it clear that the assessor was to have his fifteen per cent upon all character of head or poll taxes collected by him.

*F. A. Dorn,* district attorney, for Respondent.

*H. C. Dillon, amicus curiæ,* for Los Angeles county.

Sections 3839, 3862, and 1857, of the Political Code, and the various acts amendatory thereto, are unconstitutional. (Const. of 1879, art. XIII, sec. 12; art. IX, sec. 6.) These sections were repealed by the enactment of section 4334 of the Political Code.

BEATTY, C. J.—This is an action brought by the county against the county assessor and his sureties to recover the amount of certain percentages of personal property taxes and of the state and road poll taxes, claimed and withheld by him as his legal compensation for making the collections.

The complaint contains three counts, the first, for three hundred and fifty dollars, being six per cent of the personal property tax; the second, for three hundred and fifty dollars, being fifteen per cent of the state poll tax; and the third, for three hundred and ten dollars, being fifteen per cent of the road poll taxes. On the first cause of action the superior court gave judgment for the defendants. On the second and third causes of action the judgment was in favor of the plain-

tiff, and from this part of the judgment the defendants appeal.

In support of their appeal the defendants cite various provisions of the Political Code and the county government law, which clearly authorize the assessor to retain as his compensation for his services fifteen per cent of all poll taxes collected by him; but the respondent contends that, as to the state poll tax, all these provisions are in conflict with the mandate of the constitution which appropriates that tax exclusively to the support of the public schools; and, with respect to the road poll tax, the contention is that no law in existence prior to the election of this assessor gave him the collection of the road poll tax, and to allow him a percentage for collecting it under a law passed subsequent to his election would be to increase his compensation contrary to the inhibition of the constitution against any increase of the compensation of public officers after their election. The first section of the constitution cited by counsel for respondent in support of its contention is section 12 of article XIII, which reads as follows:

" The legislature shall provide for the levy and collection of an annual poll tax of not less than two dollars on every male inhabitant of this state over twenty-one and under sixty years of age, except paupers, idiots, insane persons, and Indians not taxed. Said tax shall be paid into the state school fund."

In connection with this they also cite section 6 of article IX, which reads as follows:

" The public school system shall include primary and grammar schools, and such high schools, evening schools, normal schools, and technical schools as may be established by the legislature, or by municipal or district authority; but the entire revenue derived from the state school fund and the state school tax shall be applied exclusively to the support of primary and grammar schools."

It is upon the last clause of the latter section that particular reliance is placed, and especially the word

*exclusively,* therein contained, which, it is contended, clearly evinces an intention on the part of the framers of the constitution that no part of the proceeds of the state poll tax shall ever be diverted to the payment of the expense of collecting it. We think, however, that the whole force of this word is directed to the point that the state school funds must only be applied to the support of *primary and grammar* schools to the exclusion of the other classes of schools which may be established by the legislature or by municipal or district authority. If we are right in this view the only remaining question is, whether the statutes referred to are in conflict with section 12 of article XIII? The question in other words is, whether, by that section, the legislature is deprived of the power to make the poll taxes pay the expense of their own collection?

As bearing upon this question it is material to note the fact that from the very beginning of legislation in California until the adoption of the present constitution the collectors of poll taxes were always authorized to retain a percentage of their collections as compensation for their services. The various statutory provisions on this subject are cited in the briefs of counsel, but we deem it sufficient in this place to refer only to sections 3839, 3862, and 1857 of the Political Code, as they existed from its adoption in 1872 up to the adoption of the constitution in 1879, in which the substance of the earlier statutes is embodied. It is material, we say, to note this uniform course of legislation, because the framers of the new constitution must be presumed to have been familiar with it, and we are, therefore, entitled to expect that if they intended to effect a radical change in the system their purpose will be found plainly and unequivocally expressed. We do not, however, see any thing in either of the sections of the constitution above referred to, or in both combined, which clearly deprives the legislature of the power to make the poll taxes pay the expense of collection. It is fair and reasonable and just that they should be charged with such

expense, and, indeed, the fact that they are exclusively a state tax makes it peculiarly appropriate that the agents for their collection should be compensated by a percentage of their collection rather than out of the salary or general funds of the counties.   The fact that the legislature might abuse the power claimed is no argument against its existence.   Most, if not all, of the unquestioned powers of the legislature are capable of being abused, but there is no presumption that they will be; and, as to this particular matter, no change has been made in the rule that had existed for nearly thirty years before the adoption of the present constitution, and which has scarcely been questioned during the fifteen years that have since elapsed.   Independent of authority we should feel little hesitation in holding upon these grounds that the law in question here is entirely consistent with the constitution, and this conclusion is only strengthened by reference to the cases decided in other states having similar constitutional provisions. Besides the cases in which it has been held that it is only just that every tax should bear the necessary expense of its collection, the case of *Shaver* v. *Robinson*, 59 Ala. 195, is directly in point, and clearly sustains the validity of this law.   *State* v. *Donnelly*, 20 Nev. 214, involves the same principle, and is decided the same way.   And while it appears that several other states have similar constitutional provisions and similar legislation, the validity of such legislation does not seem to have been questioned.   The case cited and relied upon by the respondent and by the learned judge of the superior court as sustaining a contrary view will be found, on careful examination, to involve no constitutional question, but to have been decided altogether upon a construction of the statute of Indiana, by which it was expressly provided that the fees of officers for *collecting*, managing, and disbursing the tuition fund should be paid by the counties.   (*State* v. *Board of Commrs.*, 90 Ind. 359.)   Our conclusion is, that the statutes in ques-

CIV. CAL.—5

tion are not in conflict with section 12 of article XIII of the constitution.

But counsel for respondent further contends that the only law under which Felts can claim a percentage of poll taxes was passed after his election, and, therefore, it is, as to him, inoperative, by reason of section 9 of article XI of the constitution, which prohibits any increase of compensation of county officers after their election or during their term of office.   His argument is, that the enactment of section 4334 of the Political Code, on March 10, 1891, and subsequent to the election of Felts, operated a repeal, by implication, of the various statutory provisions then in force allowing compensation for collecting poll taxes, and that Felts can claim nothing under the law thereafter enacted.   We think it very doubtful, in the first place, whether there is any such necessary conflict between the terms of section 4334 of the Political Code and the laws in question as to operate a repeal by implication; but, assuming that there was such direct conflict that both could not operate together, no repeal took place, because the amendment to the code did not take effect until sixty days after its passage, before which time the county government law had been passed, and took effect March 31, 1S91.   (Stats. 1891, p. 295.)   This was the last expression of the legislative will, and must prevail (*Goodwin* v. *Buckley*, 54 Cal. 295); and it allows the compensation claimed.   (See sec. 216.)

For these reasons we conclude that the superior court erred in its judgment as to the percentage of state poll taxes.

As to the road poll tax, that is a tax collected under the law, and not, as assumed in respondent's argument, by virtue of the county ordinance passed subsequent to the election of Felts.   By section 2652 of the Political Code the supervisors of each county are authorized to levy a poll tax not exceeding three dollars, and by the same law the road overseer, when charged with the duty of making the collection, was allowed fifteen per cent of

the amount collected for his services. (Sec. 2654.) By an amendment to section 2652, which took effect in January, 1893, the duty of collecting this tax was transferred to the county assessor (Stats. 1891, p. 478), and it was no increase of his compensation, within the sense of the constitution, to allow him for those collections the previously established percentage for the collection of all poll taxes. In other words, if a law is in existence at the time an officer is elected which gives him a certain compensation for performing a certain service, it is no violation of the constitution to pass a subsequent law under which he is compelled to perform the same service oftener than before, for although the gross income of the office may thus be increased, the compensation of the officer has not been increased in the sense of the constitution. The rule is the same first and last, i. e., a certain sum for a certain service—compensation in proportion to duty—the very rule which it was the design of the constitution to establish.

The part of the judgment appealed from is reversed.

McFarland, J., Harrison, J., Fitzgerald, J., and De Haven, J., concurred.