[L.A. No. 30088. In Bank. Nov. 2, 1973.]

PETER ROONEY et al., Plaintiffs and Respondents, v.
VERMONT INVESTMENT CORPORATION et al.,
Defendants and Appellants.

## COUNSEL

Lawson M. Brown for Defendants and Appellants.

Lipsig, Rosenfield, Temlin & Leff and Robert G. Leff for Plaintiffs and Respondents.

John D. Maharg, County Counsel, and Robert C. Lynch, Deputy County Counsel, as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**WRIGHT, C. J.**—Defendants appeal from a judgment and an order denying a motion to set aside that judgment. The validity of the judgment is challenged on the ground that the commissioner of the superior court who signed it did not have authority to do so and in any event erred in rendering it.

Plaintiffs sued on a promissory note received as partial consideration upon the purchase by defendants of a night club business. Defendants cross-complained for declaratory and injunctive relief. The parties and their attorneys thereafter executed a written "Stipulation for Settlement" by which their original purchase arrangements were modified. Pursuant thereto defendants substituted a newly executed note providing for acceleration on default and a newly executed set of security instruments. The stipulation further provided that if defendants defaulted in making installment payments under the new note plaintiffs could give notice of default and file a declaration with the court stating the fact of such default and the balance due and that the court thereupon could enter judgment for the entire balance remaining unpaid plus attorney's fees and costs.[1]

---

[1] The settlement stipulation was executed on April 1, 1971, after the complaint, answer and cross-complaint, and answer to the cross-complaint were already on file.

Plaintiffs subsequently declared a default and, without any notice of hearing, presented the stipulation, declarations of the default and the amount of the balance due, and a proposed judgment to a commissioner of the Los Angeles County Superior Court. After examining the documents and related papers and the court file of the case, the commissioner signed the judgment as "Judge, Superior Court, Pro Tem," and the judgment was entered.[2] A subsequent motion to set aside the judgment was denied.[3] Appeals have been taken from both the judgment and the order denying the motion. We granted a hearing to resolve, inter alia, issues concerning the extent of the powers of court commissioners. In summary, we hold:

1. The commissioner did not have the power to act as a temporary judge because no stipulation that he could so act had been entered into by the parties. (Cal. Const., art. VI, § 21; *People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680].)

2. Rendition of a judgment in the terms stated and agreed upon in a written stipulation executed by the parties and filed in a pending civil action is among the "subordinate judicial duties" that court commissioners may constitutionally be empowered to perform. (Cal. Const., art. VI, § 22.)

The stipulation was headed by a superior court caption so as to comply as to form to permit filing in the action (Cal. Rules of Court, rule 201). It bore the signatures of the attorneys of record and was signed as "approved" by the parties themselves.

[2]On August 31, 1971, plaintiff Orling executed, under penalty of perjury, a "Declaration to Enter Judgment Pursuant to Stipulation." In it he declared that defendants had made certain payments but were currently in default, and he prayed judgment for $33,232.73 as the total balance of principal due plus interest to date, together with $2,163.96 for attorneys' fees and $54 for court costs. Such fees were computed under section 1, rule 14, of the Rules of the Los Angeles County Superior Court, providing a schedule for fixing attorneys' fees in a "contested case" in which the prevailing party is contractually entitled to recover a reasonable attorney's fee.

The declaration referred to (1) the stipulation for settlement, (2) a declaration of plaintiffs' counsel dated August 31, 1971, to the effect that on August 27th he had mailed to defendants' counsel a notice of plaintiffs' intention to declare a default and had received no response, and (3) a memorandum of costs dated August 31, 1971. All such documents were filed in the proceedings on September 3, 1971. On that day the "Judgment (Pursuant to Default under Stipulation for Settlement)" was filed and entered in the judgment book.

[3]On September 7, 1971, plaintiffs obtained the issuance of a writ of execution and published notice that certain personal property pledged as security under the settlement stipulation would be sold on September 18th. On September 13, after applying for and obtaining an order shortening time (Code Civ. Proc., § 1005), defendants served and filed a "Notice of Motion to Vacate Default and Set Aside Judgment," stating that the motion would be made on September 16 on grounds "that defendants at no time have been in default under the promissory note to plaintiffs and that procedures required by the Stipulation of April 1, 1971 have not been complied with." On the date noticed, the motion was heard before a judge of the superior court and denied.

3. A superior court commissioner has power to render such a judgment in Los Angeles County and other counties to which Code of Civil Procedure section 259a, subdivision 6, applies, provided that the matter is among those that the court has ordered him to hear and determine.[4]

4. The record before us, however, does not reflect that the court had ordered the commissioner to hear and determine the application for the present judgment or to hear and determine any class of matters which included such application.

5. Apart from questions of the commissioner's power, rendition of the judgment was error because the parties' stipulation did not set out all the essential terms of a judgment and did not authorize entry of judgment on plaintiffs' ex parte application and without any notice of hearing.

6. The hearing and order on defendants' motion to set aside the judgment did not give due recognition to their right to have matters which were left open by the stipulation resolved in an adversary fact finding proceeding.

Preliminarily we note that two timely notices of appeal have been filed, one from the judgment itself, the other from the denial of the motion to set the judgment aside. Since the judgment was appealable (§ 904.1, subd. (a)), the order thereafter made denying the motion to set it aside also satisfies the requirements of an appealable order.[5] ██ An order denying a motion to vacate an appealable judgment is generally not appealable if such appeal raises only matters that could be reviewed on appeal from the judgment itself. The reason for this general rule is that to allow the appeal from the order of denial would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment. (*Raff* v. *Raff* (1964) 61 Cal.2d 514, 518 [39 Cal.Rptr. 366, 393 P.2d 678]; *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 228-229 [317 P.2d 613].) But this reason does not apply to the present case in which the appeals from the judgment and from the denial of the motion to set the judgment aside, although taken by separate notices of appeal, are being heard together on a single record.

---

[4]See footnote 7, *infra,* for text of Code of Civil Procedure section 259a. Unless otherwise stated all statutory references are to sections of the Code of Civil Procedure.

[5]Section 904.1 provides, in pertinent part: "An appeal may be taken from a superior court in the following cases:

"(a) From a judgment [subject to exceptions not here applicable].

"(b) From an order made after a judgment made appealable by subdivision (a)."

■ Moreover, an appeal from an order refusing to vacate a judgment will lie when the record available to the appellate court on such appeal raises issues which are not disclosed or could not be disposed of on appeal from the judgment itself. (*Title Ins. & Trust Co.* v. *Calif. etc. Co.* (1911) 159 Cal. 484, 488 [114 P. 838]; *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 228 [40 Cal.Rptr. 917].) By considering and deciding the present appeal as one taken from the order denying defendants' motion to set aside the judgment, we can properly consider as part of the appellate record the declarations and memoranda filed in support of and opposition to the motion. These supporting documents illuminate such matters as the manner in which the judgment was applied for and was entered and the conflicting contentions of the parties concerning the meaning of the stipulation for settlement.

### Motion to Dismiss Appeal

Plaintiffs have moved herein to dismiss both appeals on three grounds. First, they complain that the appeal is frivolous. It is not. ■ Second, they contend that in the settlement stipulation defendants expressly waived all rights to appeal from any judgment entered under the stipulation. Such waiver, however, did not preclude an appeal to determine whether or not the judgment was authorized by the stipulation. (See *Reed* v. *Murphy* (1925) 196 Cal. 395, 399 [238 P. 78].) ■ Third, they urged that on June 15, 1971, which was prior to entry of judgment, the corporate powers of defendant Vermont Investment Corporation were suspended under section 23302 of the Revenue and Taxation Code. The corporate powers were revived on June 20, 1972, 20 days after the suspension had been called to defendants' attention by the filing of plaintiffs' brief. The revival of corporate powers validated the procedural steps taken on behalf of the corporation while it was under suspension and permitted it to proceed with the appeal. (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369 [105 Cal.Rptr. 29, 503 P.2d 285].)

### Power of Court Commissioner to Act as a Temporary Judge

A fundamental substantive issue presented herein is whether the superior court commissioner was vested with judicial power at the time he purported to sign the judgment as an acting judge. The signature on the judgment is that of a court commissioner followed by the appellation, "Judge, Superior Court, Pro. Tem." On the date the judgment was signed and entered, the commissioner who signed the judgment was a duly appointed and acting

commissioner of the Los Angeles County Superior Court.[6] ██. A court commissioner may act as temporary judge only when the parties to the proceeding stipulate that he may do so. (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259a, subd. 4; *People* v. *Tijerina, supra,* 1 Cal.3d 41, 48-49.) No such stipulation is shown by the record.

██ The stipulation for settlement did not include a provision that a temporary judge might act for the court in hearing or determining an application for judgment or in rendering a judgment, and a stipulation specifying only the conditions under which a court may enter a judgment cannot be construed to be equivalent to a stipulation that judgment may be rendered by a court commissioner acting as a temporary judge. Nor are we here concerned with the conditions under which voluntary participation in a court proceeding before a commissioner may be tantamount to a stipulation that the commissioner serve as temporary judge (see *People* v. *Surety Ins. Co.* (1971) 18 Cal.App.3d Supp. 1 [95 Cal.Rptr. 925]), as defendants in the instant case were not notified of any date of hearing and were not present at the presentation to the commissioner of plaintiffs' application for entry of the judgment.

### *Matters Assignable to Court Commissioners Pursuant to California Constitution, Article VI, Section 22*

██ The commissioner's authority to render a stipulated judgment was not dependent on his qualifying as a temporary judge if in fact such authority to so act had been conferred upon him as a court commissioner. The fact that the judgment was signed by the commissioner followed by the notation, "Judge, Superior Court, Pro Tem." does not add or detract from its legal effect as the act of a court commissioner. (*Lewis* v. *Neblett*

---

[6]The signature as "Judge, Superior Court, Pro Tem." does not identify the individual who signed the judgment as a court commissioner because any member of the State Bar can be qualified and designated as a judge pro tempore or, in more modern terminology, temporary judge. (Cal. Const., art. VI, § 21; Cal. Rules of Court, rule 244.) Plaintiffs' counsel has submitted to us by letter, with copies to other counsel, a copy of an order signed on December 10, 1970, by Charles A. Loring, Acting Presiding Judge of the Los Angeles County Superior Court, entitled "In the Matter of Assignment of Court Commissioners for the Year 1971." We take judicial notice of this order. (Evid. Code, §§ 452, subd. (c), 459.) It states: "Effective January 4, 1971, and subject to further order of court, the following commissioners are assigned to the following departments or districts." There follows a list of commissioners which establishes that the commissioner who signed the judgment was a commissioner of the court on September 3, 1971, there being no showing of any intervening change in his status. (Civ. Code, § 3547; *Caminetti* v. *Board of Trustees* (1934) 1 Cal.2d 354 [34 P.2d 1021]; *Corvin* v. *Smead Investment Co.* (1931) 115 Cal.App. 175, 179 [1 P.2d 507].)

(1961) 188 Cal.App.2d 290, 298 [10 Cal.Rptr. 441].) Plaintiffs maintain that the commissioner had authority to render a stipulated judgment pursuant to section 259a, subdivision 6, under which court commissioners may be empowered to decide "uncontested actions and proceedings." (See fn. 7, *infra.*) In response, defendants assert that the issue of such authority has been resolved adversely to plaintiff's position in *Mosler* v. *Parrington* (1972) 25 Cal.App.3d 354 [101 Cal.Rptr. 829].

The issue in *Mosler* was the validity of a judgment rendered by a court commissioner under section 2034, subdivision (b) (2) (iii) providing for "rendering a judgment by default" against a party who refuses to obey a discovery order. Inasmuch as the opposing party failed to appear at the hearing, the motion for judgment was uncontested. *Mosler* holds that rendition of a judgment under these circumstances was not only beyond the scope of section 259a, subdivision 6, but also was not among the "subordinate judicial duties" which California Constitution, article VI, section 22, authorizes to be assigned to a court commissioner who has not been qualified by stipulation to serve as a temporary judge. We conclude that the constitutional and statutory interpretation as delineated in *Mosler* is unduly restrictive.

A general revision of article VI of the California Constitution was ratified at the general election on November 8, 1966, after being drafted by the California Constitution Revision Commission and approved by the Legislature. Section 22 of the newly enacted article adopted exactly as drafted by the commission, reads: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners *to perform subordinate judicial duties.*" (Italics added.) This section replaced a provision that had been in our state Constitution in substantially the same form since 1862 (see Cal. Const. of 1849, art. VI, § 11, as amended Sept. 3, 1862; Cal. Const., former art. VI, § 14) which read: "The Legislature may also provide for the appointment, by the several superior courts, of one or more commissioners in their respective counties, or cities and counties, with authority to perform chamber business of the judges of the superior courts, to take depositions, and to perform such other business connected with the administration of justice as may be provided by law."

A comparison of the revised section with the former provision it replaced demonstrates that the 1966 revision made three substantive changes. Two of these changes clearly were by way of enlargement: the provision was made applicable to all trial courts of record, that is, superior and municipal courts (Cal. Const., art. VI, § 1) instead of being confined only to superior courts, and the provision was made applicable to "officers such as commis-

sioners," enabling the Legislature to provide by statute for other subordinate judicial positions such as that of traffic referee (see Gov. Code, §§ 72400-72406). The third substantive change was to describe the type of judicial duties which may be assigned to commissioners by incorporating the simple statement that commissioners may be appointed "to perform subordinate judicial duties." This language replaced that which authorized commissioners "to perform chamber business of the judges . . ., to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law."

█ The words "subordinate judicial duties" were intended by the draftsmen as an appropriate constitutional phrase sufficiently broad to permit specific details to be later enacted or adopted by the legislative or rule-making agencies. (Proposed Revision (1966), Cal. Const. Revision Com., pp. 82, 99; Judicial Council of Cal., Annual Rep. (1967) p. 90.) The reference to "judicial" duties was not intended to preclude assignment of ministerial or administrative duties to court commissioners but was intended to eliminate any possibility that assigning *subordinate judicial duties* to commissioners would violate the constitutional doctrine of separation of powers. (See Proposed Revision, *supra*.)

The scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966, when the present constitutional provision was adopted. (*County of San Luis Obispo* v. *Felts* (1894) 104 Cal. 60, 64 [37 P. 780].) Under authority of former article VI, section 14, the Legislature conferred certain powers on all court commissioners throughout the state (§ 259) and, by enacting section 259a in 1929, conferred these and additional powers on commissioners in counties "having a population of nine hundred thousand inhabitants or more."[7] Exercising the powers authorized by these code sections,

---

[7]The powers given court commissioners in certain counties by section 259a are an enlargement on those given to court commissioners of all counties by section 259. Section 259a provides in relevant part:

"Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall, in addition to the powers and duties contained in Section 259 of this code, have power:

"1. To hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in the superior court of the county, or city and county, for which he is appointed;

"2. To take proof and make and report his findings thereon as to any matter of fact upon which information is required by the court; but any party to any contested proceeding may except to such report and the subsequent order of the court made thereon within five days after written notice of the court's action, a copy of said

court commissioners were by 1966 making a most significant contribution to the reduction of the judicial workload in the superior courts. Statistics for the fiscal year 1965-1966 indicate that the majority of this contribution, though by no means all, was made in Los Angeles County.[8]

---

exceptions to be filed and served upon opposing party or his counsel within said five days; and may argue his exceptions before the court on giving notice of motion for that purpose within ten days from entry thereof. After a hearing before the court on such exceptions, the court may sustain, or set aside, or modify its order theretofore made;

"3. To take and approve bonds and undertakings whenever the same may be required in actions or proceedings in such superior courts, and to examine the sureties thereon when an exception has been taken to their sufficiency, and to administer oaths and affirmations, and take affidavits and depositions in any action or proceeding in any of the courts of this State, or in any matter or proceeding whatever, and to take acknowledgments and proof of deeds, mortgages and other instruments requiring proof or acknowledgment for any purpose under the laws of this or any other state or country;

"4. To act as judge pro tempore when otherwise qualified so to act and when appointed for that purpose; provided, that while acting as such he shall receive no compensation therefor other than his compensation as commissioner;

"5. When ordered by the court appointing him so to do, to hear, and report his findings and conclusions to the court for approval, rejection or change, all preliminary matters including motions or petitions for the custody and support of children, the allowance of temporary alimony, costs and attorneys' fees, and issues of fact in contempt proceedings in divorce, maintenance and annulment of marriage cases;

"6. When ordered by the court appointing him so to do, to hear, report and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage; . . ."

By its terms, section 259a applies only to court commissioners in counties which were legislatively declared to have a population of 900,000 or more on the basis of the 1960 federal census, i.e., Los Angeles, San Diego, and Alameda Counties (see Stats. 1961, ch. 43, p. 950, § 1, p. 983, § 107) rather than in counties declared to have such population in ·Government Code section 28020 based on the 1970 census (see Stats. 1971, ch. 1204, p. 2319, §§ 60-61). Other code sections authorize the superior courts of several other counties to assign to the commissioners of those courts the duties prescribed by section 259a. (See Gov. Code, §§ 70141.5-70141.12.)

[8]Judicial statistics for the fiscal year 1965-1966, published in the Annual Report of the Administrative Office of the Courts, appended to the 1967 Judicial Council Report, show the following days of assistance given to California superior courts by commissioners and referees:

| | State Total | Los Angeles County |
| --- | --- | --- |
| Commissioners | | |
| as judges pro tempore | 5,990.5 | 5,640.0 |
| as commissioners | 2,070.5 | 1,110.5 |
| Referees | 7,329.5 | 3,051.0 |

(See Judicial Council of Cal., Annual Rep. (1967) p. 234.)

With respect to these and similar statistics, the report comments:

"As shown above, commissioners, referees and judges pro tempore provide a significant amount of assistance to several of the courts. Courts have indicated that substantially all the work of commissioners and referees would otherwise have to be performed by judges.

██ Nothing in the history of the drafting and adoption of the constitutional provision indicates that the phrase "subordinate judicial duties" should be interpreted as foreclosing or limiting court commissioners from exercising the powers which the Legislature had conferred upon them prior to 1966. Neither of the explanations in the official report of the California Constitution Revision Commission manifests any restrictive intent. One such explanation is that the phrase prescribes judicial duties that commissioners "may perform," the present tense referring to the time of writing, prior to the adoption of the amendment.[9] The other explanation is that the phrase is used "[t]o indicate the subordinate nature of duties that officers such as commissioners should be allowed to perform." (Proposed Revision, *supra,* p. 99.) Since all the judicial powers that sections 259 and 259a authorized commissioners to exercise pursuant to the former constitutional provision can fairly be described as "subordinate," the commission's second explanation was fully consistent with an intent to validate preexisting powers by the enactment of the revised provision.[10]

The absence of any manifestation of intent on the part of the framers of the revision of article VI to modify the powers of court commissioners under long-existing legislation affirmatively shows that they intended no such change. They "must be presumed to have been familiar with [this legislation], and we are, therefore, entitled to expect that if they intended

"In view of this fact it would be appropriate to add the number of commissioners and referees to the number of authorized judges on a court in using comparative caseload statistics for the trial courts." (See Judicial Council of Cal. Annual Rep. (1967) p. 236.)

[9]See Proposed Revision, *supra,* at page 82, commenting on the draft of what was then designated as section 23 but was ultimately adopted as section 22 of article VI: "Commissioners . . . may perform judicial duties and to avoid the possible violation of the separation of powers doctrine, need constitutional authority. Proposed Section 23, therefore, permits the Legislature to provide for the appointment by superior and municipal courts of officers 'such as,' but not limited to, commissioners. Their scope is prescribed by the phrase 'subordinate judicial duties.' "

[10]It is also significant that in the legislative counsel's analysis of the proposed revision of article VI and several other articles of the Constitution, and in the arguments favoring and opposing the revision, prepared and printed for the voters at the general election of November 8, 1966, there is no indication of any intent to change or restrict the judicial powers assignable to court commissioners. (See *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 695 [97 Cal.Rptr. 1, 488 P.2d 161]; *Carter* v. *Seaboard Finance Co.* (1949) 33 Cal.2d 564, 580-582 [203 P.2d 758]; *Yosemite L. Co.* v. *Industrial Acc. Com.* (1922) 187 Cal. 774, 784 [204 P. 226, 28 A.L.R. 994].) Indeed there is a contrary implication in the statement in the argument supporting the revision that the reforms it contains "have been labeled by party leaders and non-partisan groups alike as essential to the effective operation of modern government." This argument would be inappropriate to a revision intended to curtail the powers already granted court commissioners by sections 259 and 259a.

to effect a radical change in the system their purpose will be found plainly and unequivocally expressed." (*County of San Luis Obispo* v. *Felts, supra,* 104 Cal. at p. 64.)

The Judicial Council, which both before and after the revision of article VI was constitutionally charged with seeking and implementing improvements in the administration of justice (Cal. Const., art. VI, § 6, former art. VI, § 1a), closely followed the work of the California Constitution Revision Commission in revising article VI, carefully studied the commission's draft, recommended minor changes that the Legislature accepted in substance, and enthusiastically supported the text as finally submitted to the voters. (Judicial Council of Cal., Annual Rep. (1967) p. 65.) With this background and responsibility, the Judicial Council was satisfied that the adoption of article VI, section 22, *"preserves the existing procedure* for meeting the increasing judicial workload through the use of court assistants such as commissioners, referees, and masters." (Judicial Council of Cal., Annual Rep. (1967) p. 90; italics added.)[11]

Legislation enacted after the constitutional amendment became effective reflects a legislative judgment that the new provision authorized the continued assignment to court commissioners of judicial duties at the same or comparable levels of responsibility. Thus, the 1967 Legislature amended section 170.6 to provide that court commissioners, as well as judges, could be disqualified by affidavit of prejudice. (Stats. 1967, ch. 1602, p. 3832, § 2.)

In 1970, the Legislature enacted Government Code section 72190.1 authorizing municipal court commissioners to conduct arraignments if directed to perform such duties by the presiding or sole judge of the court. The same Legislature provided for the appointment by municipal courts of traffic referees with powers, at the direction of the court, to conduct arraignments, take pleas, grant continuances, and set cases for trial with respect to any misdemeanor violation of the Vehicle Code, and to impose

---

[11]The contribution of court commissioners to the judicial workload of the superior courts has been not only preserved but significantly increased since the constitutional revision of 1966. Judicial statistics comparable to those stated for 1965-1966 in footnote 8, *supra,* show the following days of assistance given to superior courts by commissioners and referees during the fiscal year 1971-1972:

| | State Total | Los Angeles County |
|---|---|---|
| Commissioners | | |
| as temporary judges | 8,017.0 | 7,282.5 |
| as commissioners | 5,984.0 | 4,635.5 |
| Referees | 9,061.0 | 1,403.0 |

(See Judicial Council of Cal., Annual Rep. (1973) p. 235.)

fines or order attendance at traffic school when there has been a plea of guilty or nolo contendere to certain minor traffic violations. (Gov. Code, §§ 72400-72402.) Qualified traffic referees may also serve as court commissioners, and commissioners may act as traffic referees. (Gov. Code, §§ 72403, 72405.) In enacting such legislation in 1970 the Legislature had before it, and presumably relied on, an opinion of the legislative counsel carefully analyzing the constitutionality of such legislation under article VI, section 22, and concluding that the legislation fell within the section's authorization to the Legislature to "provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (1 Assem. J. pp. 1150-1155 (1970).) The Legislature thus must be deemed to have concluded that the constitutional provision empowered it not only to authorize the appointment of traffic referees but to specify as subordinate judicial duties the hearing and determination of particular preliminary or uncontested matters that traffic referees and commissioners could be assigned to perform. This conclusion carries with it "the strong presumption in favor of the Legislature's interpretation of a provision of the Constitution." (*Methodist Hosp. of Sacramento* v. *Saylor, supra,* 5 Cal.3d 685, 692.)

 We accordingly hold that section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution. Anything to the contrary in *Mosler* v. *Parrington, supra,* 25 Cal.App.3d 354, is disapproved.

### Authority of Superior Court to Empower a Commissioner to Hear and Determine an Application for Rendition of a Stipulated Judgment

Defendants contend that section 259a, subdivision 6, relied upon by plaintiffs, does not authorize a court commissioner to hear and determine an ex parte application for rendition of a judgment explicitly authorized by a written stipulation of the parties. In examining this contention, we must assume the existence of a stipulation which would be sufficient to support a judgment rendered on ex parte application to a regular judge and we consider whether the judgment could also be rendered by a commissioner.

Section 259a, subdivision 6, authorizes certain courts, including the trial court below, to empower its court commissioners "to hear, report on and determine all uncontested actions and proceedings" other than marital pro-

ceedings.[12] The phrase "hear, report on and determine" does not make it mandatory that the commissioner obtain prior approval from the court before making each of his determinations. ■ Although this language permits the court to require the commissioner to hear and report on an uncontested matter without determining it, it also allows the court to order a commissioner to hear and determine the matter prior to making any report. (*West* v. *U. L. C. Corp.* (1965) 232 Cal.App.2d 85, 89 [42 Cal. Rptr. 603].)

It has been suggested that a commissioner's power under subdivision 6 to hear and determine "uncontested actions and proceedings" should be read as if it means "uncontested actions and special proceedings." (See *Mosler* v. *Parrington, supra,* 25 Cal.App.3d 354, 358.) But this interpretation is unduly restrictive because it would limit the power to act appropriately to cases in which an entire action or an entire special proceeding, such as a probate proceeding, is uncontested. ■ The term "proceeding" may refer not only to a complete remedy (see § 23)[13] but also to a mere procedural step that is part of a larger action or special proceeding. (*Larkin* v. *Superior Court* (1916) 171 Cal. 719, 724 [154 P. 841]; *Estate of Simmons* (1914) 168 Cal. 390, 395 [143 P. 697]; *Title Insurance etc. Co.* v. *King etc. Co.* (1912) 162 Cal. 44 [120 P. 1066]; *Burns* v. *Superior Court* (1903) 140 Cal. 1, 5 [73 P. 597]; *Stonesifer* v. *Kilburn* (1892) 94 Cal. 33, 43 [29 P. 332]; cf. *LaFleur* v. *M. A. Burns Lumber Co.* (1922) 188 Cal. 321, 328 [205 P. 102].) Thus, even though the filing of an answer to a complaint makes the action itself contested, the failure to oppose a motion that is duly noticed and brought on for hearing in the action makes the motion itself an uncontested proceeding within the meaning of subdivision 6 of section 259a. ■ Similarly, a written stipulation of the parties authorizing entry of a judgment on terms specifically agreed upon eliminates the contested nature of the action and makes rendition of the stipulated judgment the determination of an uncontested action or proceeding within the meaning of said subdivision 6. (*People* v. *Superior Court* (1965) 239 Cal.App.2d 99, 103 [48 Cal.Rptr. 445].)

---

[12]See footnote 7, *supra,* for the text of section 259a and citation of statutory provisions determining the courts to which it applies.

[13]Sections 22 and 23 provide as follows:

Section 22: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Section 23: "Every other remedy is a special proceeding."

*Authorization from Court to Commissioner to*
*Hear and Determine Plaintiff's Application*

 Section 259a, subdivision 6 authorizes a court commissioner to hear and determine an uncontested matter only "[w]hen ordered by the court appointing him to do so." The required court order need not be expressly addressed to the hearing of a particular proceeding although it may be in this form. It may also be in the form of a blanket order assigning specified duties to named commissioners. The order may consist of a court rule providing that all commissioners of the court, or commissioners assigned to one or more particular departments, may exercise specified powers under subdivision 6. The court may order the commissioner to hear and determine a matter or class of matters simply by instructing the clerk of the court to channel those matters to him. The order may take any form that establishes the court's official determination that the proceeding is one that the commissioner should hear and determine.

In the instant case, however, there is *nothing* in the record with respect to any order or any other expression of direction by the court that the commissioner exercise powers under section 259a, subdivision 6. It is unnecessary to pursue this issue further because, as will appear, we have determined that the judgment must be vacated on grounds that would exist even if the judgment had been signed by a judge of the superior court.

*Propriety of Rendering Judgment on Plaintiff's Ex Parte*
*Application and of Denying Motion to Set It Aside*

No one representing defendants was present when plaintiffs applied to the court for entry of the judgment or when the judgment was in fact signed. The initial application was made on August 31, 1971, to a commissioner of the superior court but he declined to sign the judgment before September 3, 1971. Thereafter, the judgment was signed on the latter date by the commissioner whose name appears thereon. Although plaintiffs mailed copies of the application papers to defendants' counsel on August 31st, defendants *were given no notice* of when the matter would be presented to the court and so had no opportunity to be heard or to interpose objections to entry of the judgment. (*Bohn* v. *Bohn* (1913) 164 Cal. 532, 536 [129 P. 981].)

 When a written stipulation sets forth all the terms of a judgment agreed to by the parties, the filing of the stipulation normally provides a sufficient basis for entry of the judgment upon the ex parte application of either party. (*Heller* v. *Dyerville Mfg. Co.* (1897) 116 Cal. 127, 134 [47 P. 1016]; cf. *Pawling* v. *Malley* (1951) 107 Cal.App.2d 652 [237 P.2d

663].) But if the stipulation *omits any essential element* of a complete judgment, a judgment cannot be entered until the missing element or elements are established by proof or by further stipulation. *(People's Ditch Co. v. Fresno etc. Co.* (1907) 152 Cal. 87 [92 P. 77]; *Cooper v. Gordon* (1899) 125 Cal. 296, 302 [57 P. 1006]; *Division Labor Law Enfmt. v. Brooks* (1964) 226 Cal.App.2d 631 [38 Cal.Rptr. 284].) Similarly, if a material term of the stipulation is ambiguous, judgment cannot be entered until such ambiguity is appropriately resolved. (See *Bemer v. Bemer* (1957) 152 Cal.App.2d 766, 771 [314 P.2d 114].)

Although the stipulation in the present case was drafted in a form suitable for filing and prescribes a procedure for entry of a judgment, as set forth in footnote 14, *infra,* it leaves open for subsequent determination both the amount of the contemplated judgment and the occurrence of prerequisites for its entry, that is, default in payment and the giving of notice of such default.[14]

As previously stated, the court commissioner signed the judgment on the basis of the stipulation, plaintiffs' written declarations and memorandum of costs, and the pleadings and papers previously filed in the case.

---

[14]The stipulation recites that respondents hold appellants' promissory note of November 9, 1970, for the principal sum of $70,000, payable at the rate of $2,000 per month including interest at 7 percent per annum, but it does not recite the balance due on the date of the stipulation, April 1, 1971. The stipulation describes several kinds of security held by plaintiffs to guarantee payment of the note and provides that on the day following execution of the stipulation 400 shares of stock in a major corporation, included in this security, are to be liquidated and the net proceeds applied to reduce the balance of the note "to approximately $39,000." The stipulation further calls for execution of a new note and new security instruments superseding those described in the recitals. Executed copies of the new note and other instruments, all dated as of November 20, 1970, are attached to the stipulation. Like its predecessor the new note is in the principal sum of $70,000, payable at the rate of $2,000 per month including interest at 7 percent per annum, and provides that in the event of default on any installment payment, the holder may declare the entire balance of principal and accrued interest immediately due and, if an action is instituted, the holder may recover attorney's fees as fixed by the court.

The stipulation further provides the conditions under which the installment payments may become delinquent, permitting declaration of a default, and specifies the notice of default that plaintiffs must give to defendants. Once a default has been duly declared and noticed, the following procedure is set forth for obtaining entry of a judgment by the court:

"In the event of a default, plaintiffs individually or by their attorney, shall be able to enter a judgment against VERMONT, MATING GAME, WILLIAM and JOAN, jointly and severally, forthwith, for the then outstanding balance of principal and interest by filing with this Court, a declaration setting forth the payments, if any, received on account, the fact of default, and the then outstanding balance of principal and interest. The Court shall be required to enter a judgment, together with any attorneys' fees and costs, the balance remaining unpaid, for which plaintiffs shall be entitled."

In doing this, it may be presumed that the commissioner construed the provisions of the stipulation as authorizing the court to accept plaintiffs' declarations as conclusive proof of the fact of default and the amount due and to enter the judgment without first giving defendants an opportunity to be heard in opposition to plaintiffs' showing. This was error. The stipulation does not provide that the court shall enter judgment for whatever amount is claimed in plaintiffs' declaration but that the court shall enter a judgment for the unpaid balance, together with attorney's fees and costs, for which plaintiffs "shall be entitled." Thus, the court must satisfy itself of the amount due and other facts prerequisite to entering judgment, and this it could not do without some form of hearing or trial. Moreover, the stipulation contains no express waiver of the right to a hearing and in the absence of explicit language a waiver may not be implied. (*Smith* v. *Campbell & Facciolla, Inc.* (1962) 202 Cal.App.2d 134, 135-136 [20 Cal.Rptr. 606].)[15]

The practical importance under the circumstances of this case of giving the party against whom the proposed judgment is to be entered an opportunity to be heard is demonstrated by the apparent inconsistency between plaintiffs' declarations and the terms of the stipulation and by the fact that this inconsistency was first brought out by defendants' declarations and memoranda filed in support of their motion to set aside the judgment. The inconsistency pertains to the prerequisites for declaring defendants in default.

---

[15]We do not reach the question of whether a written stipulation filed in a pending action could by express language authorize the entry of a money judgment in such amount as should be declared to be due in a declaration subsequently executed and filed by the plaintiff without affording the defendant any opportunity for a trial or hearing.

Procedures short of a trial were also available to plaintiffs for obtaining a judgment if they were satisfied that defendants' default and the amount consequently due from them under the settlement stipulation could be readily established by facts not reasonably open to dispute. The stipulation and declarations which plaintiffs filed with the court could properly have constituted the papers supporting a motion for summary judgment under section 437c. Affidavits or declarations (§ 2015.5) filed in support of a motion for summary judgment need only contain the requisite facts controverted by the pleadings and need not include facts admitted by the adverse pleadings. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 147-148 [60 Cal.Rptr. 377, 429 P.2d 889]; *Reich* v. *Yow* (1967) 249 Cal.App.2d 12, 14-15 [57 Cal.Rptr. 117].) The stipulation superseded the pleadings with respect to the stipulated facts. (*Capital National Bank* v. *Smith* (1944) 62 Cal.App.2d 328, 344 [144 P.2d 665].) Thus, to support an unopposed summary judgment, the declarations filed by plaintiffs would have had only to establish the facts essential to the judgment that were left unresolved by the stipulation: the fact of default, the giving of proper notice of default, and the amount due.

Defendants urged in support of their motion to set aside the judgment that the default asserted in plaintiffs' declarations was premised upon an installment payment's being due 10 days earlier than the due date actually provided by the stipulation. Plaintiffs declared the default on the basis of defendants' failure to make an installment payment of $2,000 by August 30, 1971, a date arrived at by assuming a due date of August 20 and adding a grace period of 10 days. Defendants contend that the 10-day grace period provided by the stipulation is in addition to another 10-day period provided by the revised promissory note which is adopted by the stipulation with a copy of the note annexed to it as an exhibit. The note provides for payments of principal and interest "in equal monthly installments of Two Thousand And No/100 ($2,000.00) Dollars on the 20th day of each *or within ten (10) days thereof* and every month. . . ." (The italicized words were inserted in handwriting.) The stipulation provides that after the revised note is executed it "shall govern the rights of the parties."

With respect to default, the stipulation provides: "The defendants, apart from the terms of said promissory note (Exhibit 'A' above) shall have a grace period of ~~five (5)~~ *ten (10)* days in making any installment payment, and plaintiffs shall not be permitted to declare a further default until said ~~five (5)~~ *ten (10)* days shall have past [*sic*] (i.e., or until the ~~26th day of the month~~ *tenth day after the due date*) and they shall have sent at least three (3) days' written notice of default to defendants' attorney . . .; the risk of notice to said attorney shall however be the risk of defendants and not plaintiffs. Said 3 day notice shall be sent by the 22nd of the month." (Typewritten words were stricken by hand, as indicated, and replaced by the handwritten words shown in italics.)

Defendants' contention on the motion to vacate the judgment was that the stipulation's grace period of 10 days extending "until the tenth day after the due date," is in addition to the 10-day period following the 20th of each month provided by the promissory note. We make no attempt to resolve the issue but indicate only that on examination of the face of the documents, defendants' construction is not unreasonable, particularly since the stipulation declares that the grace period it provides is "apart from the terms of said promissory note." Under defendants' interpretation of the instruments, the installment required to be paid within 10 days after August 20 would not have been due until 20 days after that date which would be some seven days after the judgment was in fact signed and entered.

The motion to vacate the judgment was heard and denied by a judge of the superior court. Plaintiffs invoke the rule that if the substance of a stipulation is to be incorporated in a judgment but its language is ambiguous, it is the court's duty to interpret the language to ascertain the intent of the

parties. (*Southern Cal. Gas Co.* v. *Joseph W. Wolfskill Co.* (1963) 212 Cal.App.2d 882, 888 [28 Cal.Rptr. 345].) They argue that in rendering the judgment and denying the motion to set it aside, the court necessarily interpreted the stipulation as requiring payment within 10 days after the 20th of the month, thereby validating plaintiffs' act of declaring defendants in default, and that this construction should be upheld on appeal unless unreasonable.

A trial court's interpretation does not necessarily carry the weight urged by plaintiffs. Unless the interpretation of a written instrument turns on the credibility of extrinsic evidence, an appellate court must independently arrive at its own interpretation and may not uphold a judgment based on an inconsistent interpretation of the trial court merely because the construction made by the trial court was reasonable. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) We are unable to determine in the instant case the extent to which the meaning of the documents and instruments might turn on extrinsic evidence of surrounding circumstances. (See *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) There has as yet been no hearing at which the parties could present such evidence.

In any event it would be premature for us to interpret the instruments before a valid judgment is entered by the trial court. The judgment before us is void not only because the commissioner attempted to exercise authority not conferred upon him but also because the defendants did not effectively waive the right to be heard in opposition to its entry and because plaintiffs' own showing in opposition to the motion to set the judgment aside establishes that defendants were given no notice of hearing nor were they afforded an opportunity to be heard. (*Thompson* v. *Cook* (1942) 20 Cal.2d 564, 569-571 [127 P.2d 909]; *Hill* v. *City Cab etc. Co.* (1889) 79 Cal. 188, 191 [21 P. 728].)

 The subsequent hearing on the motion to set aside the judgment did not cure the lack of an opportunity for hearing or trial before the judgment was rendered in the first place. Having filed an answer, defendants were entitled to have disputed issues of fact determined by a trial. (*Wilson* v. *Goldman* (1969) 274 Cal.App.2d 573 [79 Cal.Rptr. 309].) A hearing on a motion to vacate a judgment is not a substitute for a trial. (*Gardner* v. *Shreve* (1949) 89 Cal.App.2d 804, 808-810 [202 P.2d 322].) Summary judgment proceedings are available for determining whether triable factual issues exist but not for resolving such issues. (*R. D. Reeder*

*Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785].)

### Disposition of the Appeals

Defendants have taken timely appeals from both the judgment and the order denying their motion to set aside the judgment. It is the latter appeal that we have considered and now decide on the merits. Accordingly, the order denying defendants' motion to vacate default and set aside the judgment is reversed with directions to grant the motion and for further proceedings not inconsistent with this opinion. The appeal from the judgment is dismissed as moot. Appellants to recover costs on both appeals.

McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur.

I agree with the result reached by the majority in this case, and in general with the explication of a court commissioner's authority. However I cannot acquiesce in the majority's tardy disapproval of *Mosler* v. *Parrington* (1972) 25 Cal.App.3d 354 [101 Cal.Rptr. 829], a case in which this court unanimously denied a petition for hearing on July 5, 1972.

An action is contested when an answer is filed in response to a complaint. Thereafter determination of the merits of the contested case is the ultimate function of the judicial process, and, in the absence of a stipulation, requires a duly constituted judge for its consummation. One cannot gainsay the observation of the Court of Appeal that whether or not the motion is contested the major surgery involved in striking an answer "is hardly a 'subordinate judicial duty.' " That, simply, was the rule of *Mosler* and I am convinced it is correct.

One need not be unsympathetic to the administrative complexities of a huge metropolitan court to insist, despite the dictates of expediency, that substantive controversies between litigants be decided only by judges to whom the constitutional responsibility has been assigned. (Cal. Const., art. VI, §§ 1, 4, 10.) As Justice Cardozo wrote, "codes and statutes do not render the judge superfluous." (Cardozo, Nature of the Judicial Process (1921) p. 14.) Court commissioners should be permitted to perform only *subordinate* judicial duties. I would place repeated emphasis upon the adjective.

Clark, J., concurred.

Respondents' petition for a rehearing was denied December 19, 1973.