I concur in the result. But, without calling into question the abilities or integrity of California's commissioners who provide vital support to our judicial system, it is a result that gives one pause as it holds that a nonjudicial officer is captain of the gate when a person being held in confinement seeks the protections of the "Great Writ." (See Black's Law Diet. (8th ed. 2004) p. 728, col. 1.) While the majority is technically correct that at the time the petition for a writ of habeas corpus is summarily denied there is not yet a "cause" to be "tried," it is also correct that, absent appellate court intervention, there will never be a cause to be tried without the Commissioner's permission to pass.
The summary denial of a petition for a writ of habeas corpus is a determination of the dispute between the prisoner and the confining authority by a nonjudicial officer, although not technically a "trial," of a "cause." *Page 630 
Whether this is significant is a conceptual dilemma we need not resolve here because, for the reasons that follow, under Code of Civil Procedure section 259, a commissioner has the authority to "hear and determine" writs of habeas corpus, an authority not undone by California Constitution, article VI, section 21 or 22. Surely, if a commissioner has the constitutional and statutory authority to "hear and determine" a petition for a writ of habeas corpus, a commissioner has the authority to decide whether the petition should be summarily denied due to its failure to state a prima facie case for relief.
Preliminarily, I note that it should not matter whether the restraint challenged by a particular writ is considered "significant," but only whether it violates the law. According to my reading, the majority opinion does not suggest otherwise.
I also note that, like the majority, I am sympathetic to the workload imposed on small counties that have large prison populations and few superior court judges. Even so, as Justice Mosk wrote in his concurring opinion in Rooney v. VermontInvestment Corp. (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353,515 P.2d 297] (Rooney), taking note of the demands on the courts in large metropolitan counties, "[o]ne need not be unsympathetic to the administrative complexities of [the] . . . court to insist, despite the dictates of expediency, that substantive controversies between litigants be decided only by judges to whom the constitutional responsibility has been assigned. (Cal. Const., art. VI, §§ 1, 4, 10.) As Justice Cardozo wrote, `codes and statutes do not render the judge superfluous.' (Cardozo, Nature or the Judicial Process (1921) p. 14.)" (Id. at p. 373 (cone. opn. of Mosk, J.).)
The determination of this appeal is controlled by the California Supreme Court's holding in Rooney.
In Rooney, the court considered whether, in Los Angeles County, "[r]endition of a judgment in the terms stated and agreed upon in a written stipulation executed by the parties and filed in a pending civil action is among the `subordinate judicial duties' that court commissioners may constitutionally be empowered to perform." (Rooney,supra, 10 Cal.3d at p. 357.) The court decided that rendition of judgment in those circumstances was a subordinate judicial duty, holding that the duties set forth in "[then] section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution." (Id. at p. 366.)
The high court reached its decision by referring first to the fact that, in November 1966, the electorate ratified a general revision of article VI of the California Constitution *Page 631 
and that section 22 thereof read, as it does today, "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." The court found that the phrase "subordinate judicial duties" was merely a simpler way of stating the scope of commissioners' lawful duties allowed by the law prior to 1966 which authorized them "`to perform chamber business of the judges . . ., to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law.'" (Rooney, supra, 10 Cal.3d at p. 362.)
The court then reasoned that "[t]he scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966. . . ." (Rooney, supra, 10 Cal.3d at p. 362.) In 1966, Code of Civil Procedure former section 259a authorized commissioners in counties having a population larger than 900,000 persons to, among other things, "hear and determine ex parte motions, for orders and alternative writs and writs of habeascorpus. . . ." (Code Civ. Proc., former § 259a, italics added.) In 1980, Code of Civil Procedure section 259a was repealed and its provisions, including this one, were consolidated in the present section 259. (Stats. 1980, ch.229, § 1, p. 472.)
Finally, the Supreme Court observed that "[n]othing in the history of the drafting and adoption of [article VI, section 22
of the California Constitution] indicates that the phrase `subordinate judicial duties' should be interpreted as foreclosing or limiting court commissioners from exercising the powers which the Legislature had conferred upon them prior to 1966" (Rooney, supra, 10 Cal.3d at p. 364) and that "[t]he absence of any manifestation of intent on the part of the framers of the revision of article VI to modify the powers of court commissioners under long-existing legislation affirmatively shows that they intended no such change." (Ibid.)
Thus, Rooney held generally that subordinate judicial duties within the meaning of article VI, section 22 of the California Constitution included at least those duties held by commissioners prior to 1966. In People v. Superior Court(Laff) (2001) 25 Cal.4th 703 [107 Cal.Rptr.2d 323,23 P.3d 563], our high court said, although without citation toRooney, "the Constitution specifies that `[t]he Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties.' (Cal. Const., art. VI, § 22.) Article VI, section 22, was intended to retain constitutional authorization for existing statutes under which court commissioners had exercised their powers (see Code Civ. Proc., § 259). . . ." (Id. at p. 721.) *Page 632 
As set forth in the majority opinion, prior to 1966, commissioners were authorized to hear and determine writs of habeas corpus. Given the holding in Rooney, there is nothing more to be said. *Page 633