June 7, 1990

191

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

RITA C. SABLAN, et al., ) APPEAL NO. 89-008
 Plaintiffs/Appellants- ) CIVIL ACTION NO. 88-366
 Appellees, )
 )
 vs. ) OPINION
 )
VICENTE R. IGINOEF, et al., )
 Defendants/Appellees- )
 Appellants. )
_____)

Argued March 29, 1990

Counsel for Plaintiffs/Appellants- Douglas F. Cushnie
 Appellees: P. O. Box 949
 Saipan, MP 96950

Counsel for Defendant/Appellee: David A. Wiseman
 P. O. Box 404
 Saipan, MP 96950

Counsel for Defendants/Appellants: Michael A. White
 P. O. Box 222, CHRB
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, BORJA, Justice, and HILLBLOM, Special Judge.

BORJA, Justice:

This is an appeal from a judgment of the trial court quieting title to Lot 330, Saipan, in defendant Guadalupe P. Manglona, hereafter "Manglona," to the exclusion of plaintiffs Rita C. Sablan, Deanna C. Sablan, Merced M. Sablan, Rudolfo M. Sablan, Ignacio M. Sablan, Magdalena M. Sablan, Mariano M. Sablan, Estate

of Maria S. Reyes, and David P. Sablan, Jr., hereafter "Sablans." The trial court also quieted title to Lot 347, Saipan, in the Sablans (other than David P. Sablan, Jr.) and Manglona, with Manglona obtaining an undivided one-eighth interest. Defendants Clara T. Camacho, Rosa M. Fejeran, and Lourdes M. Rangamar, hereafter "Malites," were denied their claim to Lot 347.

The Sablans appeal the judgment awarding fee simple title to Manglona in Lot 330, and an undivided one-eighth interest in Lot 347. The Malites appeal that part of the judgment denying their claim to Lot 347.[1]

FACTS

Lot 347

It is undisputed that Lot 347 was at one time owned by the Malites.

The trial court found that this lot was orally conveyed by Elias Malite, the Malites' predecessor, to Elias Sablan, the Sablans' predecessor, sometime in the late 1930's.

In 1945, the Malites filed a claim of ownership for this lot with the government. However, by Determination of Ownership No. 188, dated June 2, 1952, the Trust Territory Government determined that Lots 330 and 347 belonged to Elias Sablan. The Malites claim that no notice was given to them regarding the proceedings leading to the title determination, nor was a copy of the determination provided to them within a reasonable period after June 2, 1952. Elias Sablan worked for the Land and Claims Office, the office

---

[1]The Malites make no claim to Lot 330.

193

charged with conducting proceedings leading to the issuance of title determinations, soon after the war and at the time that the determination issued in 1952.

The Malites testified that they checked their claim with Elias Sablan in the Land and Claims Office in 1960, and with the Land Management Office and Land Commission Office in the 1970's. They claimed that they were promised that the land would be returned to them.

Elias Sablan died intestate in 1968.

The Malites claimed that they learned for the first time in 1972 that title to the lot was in the name of Elias Sablan.

The trial court found that the Sablans had possession, use and control of the lot for about 40 years. One of the Malites testified that she saw Elias Sablan and his family on the land since 1950.

## Lot 330

As noted above, this lot was determined by the Trust Territory Government to be owned by Elias Sablan in 1952.

Sometime in 1966, Elias Sablan and his family gathered at his home and, among other things, discussed Lot 330. Elias Sablan, due to ill health and the inability to maintain payments on a loan from the Economic Development Loan Fund, asked who among his family would be able to take over the loan payments. David M. Sablan and Manglona, then husband and wife, were the only ones able to do so. Elias Sablan then said that, if David M. Sablan and Manglona operated and managed the Blue Beach Motel (situated on Lot 330) and

194

paid off the loan from the proceeds of the operation, the lot would be theirs.

The trial court found that David M. Sablan and Manglona performed the conditions and that an oral transfer of this lot occurred prior to the death of Elias Sablan in 1968.

From 1966 to 1977, David M. Sablan and Manglona possessed, controlled, and managed Lot 330.

In 1977, David M. Sablan and Manglona were divorced.[2] Among other things, the divorce decree awarded all of David M. Sablan's interest in Lots 330 and 347 to Manglona, with a proviso that she devise by will her interests in the lots to her surviving children at her death. The decree also required David M. Sablan to execute a deed to Manglona to effectuate the decree. There was no appeal of the divorce decree. David M. Sablan, pursuant to court order, executed a quitclaim deed to Manglona in 1981 conveying his interest in this lot, and in Lot 347.

In 1979, Manglona brought an action in the Commonwealth Trial Court against the tenants of Lot 330 for unpaid rent. In addition to Manglona as a plaintiff, Carmen M. Sablan, the widow of Elias Sablan, and the children of David M. Sablan and Manglona (including David P. Sablan, Jr., a plaintiff in this case) were also named as plaintiffs. During the course of this trial, Carmen M. Sablan confirmed the result of the 1966 gathering.

---

[2]The divorce decree, which was stipulated, was handed down in 1978, but rendered _nunc pro tunc_ to September 1, 1977, the date that the stipulation was recited and accepted in open court.

In 1981, Manglona sued David M. Sablan to reduce the High Court divorce decree to a Commonwealth judgment for enforcement purposes. David M. Sablan, during this lawsuit, filed a motion to amend the divorce decree claiming that he had no interest in Lots 330 and 347. This motion was denied. No appeal was taken of the judgment.

Later in 1981, Carmen M. Sablan filed a lawsuit against Manglona in the Commonwealth Trial Court seeking to quiet title in Lots 330 and 347 in her name. Manglona filed a counterclaim also seeking to quiet title in the same lots in her name. This action was dismissed with prejudice, pursuant to stipulation of counsel.

Manglona was never a citizen of the Trust Territory of the Pacific Islands, and is not a person of Northern Marianas descent, as that term is defined in the NMI Constitution. She has always been a citizen of the United States of America. David M. Sablan is a person of Northern Marianas descent, but ceased being a citizen of the Trust Territory of the Pacific Islands sometime in 1956. Since 1956, he has been a citizen of the United States of America.

### Recusal

The complaint in the present case was filed on April 26, 1988. The Sablans filed a motion for summary judgment on March 9, 1989. After a hearing on the motion for summary judgment, but before the decision denying such motion was issued, the Sablans moved to disqualify the trial judge. The basis for recusal was on the ground that the trial judge was a party defendant in an unrelated lawsuit "involving the application of Article XII to individuals

196

holding long-term interests in real property who are not of Northern Mariana [sic] descent." Order Denying Plaintiffs' Motion for Summary Judgment, p. 1, n. 1, March 29, 1989. The trial judge denied the motion to recuse on the ground that it was filed too late.

## ISSUES PRESENTED

1. Was the trial court clearly erroneous in finding that Lot 347 was sold by the Malites to Elias Sablan?

2. Are the Sablans barred by the doctrine of _res judicata_?

3. Was the motion to recuse timely filed?

## STANDARD OF REVIEW

The first issue involves a question of fact and is subject to the clearly erroneous standard of review. _EDLF v. Pangelinan_, 2 CR 451 (D.NMI App.Div. 1986); _Marianas Public Land Trust v. Government NMI_, 2 CR 870 (D.NMI App.Div. 1986); _Palacios v. Trust Territory of the Pacific Islands_, 2 CR 904 (D.NMI App. Div. 1986); _Aldan v. Kaipat_, 2 CR 190 (D.NMI App.Div. 1985), _aff'd_ 794 F.2d 1371 (9th Cir. 1986); and _EDLF v. Arriola_, 2 CR 212 (D.NMI App.Div. 1985).

The second and third issues involve legal questions and are subject to _de novo_ review. _Loren v. E'Saipan Motors, Inc._, No. 89-006, slip op. at 3 (NMI April 16, 1990); _Robinson v. Robinson_, No. 89-012, slip op. at 4 (NMI February 5, 1990); _Marianas Public Land Trust v. Government NMI_, 2 CR 870 (D.NMI App.Div. 1986); _EDLF v. Pangelinan_, 2 CR 451 (D.NMI App.Div. 1986); and _Elayda v. J & I Construction Co._, 1 CR 1025 (D.NMI App.Div. 1984).

197

## ANALYSIS

### I. The Malites' Claim

 The trial court was not clearly erroneous when it found that Lot 347 was orally transferred sometime in the latter 1930's. To be sure, there were conflicting evidence regarding such a transfer. The Sablans testified to such a transfer. The Malites, on the other hand, testified and introduced documentary evidence disputing such transfer.

In reading the Memorandum Opinion of the trial court, however, it appears that what led the trial court to believe that it was more probable that an oral transfer did occur were three other facts, other than the oral testimony of witnesses. These facts were: 1) the Determination of Ownership that issued in 1952;[3] 2) the exclusive possession, use and control of Lot 347 by the Sablans from at least 1950; and 3) the failure of the Malites to actively pursue their claim despite knowing that the Sablans possessed, used and controlled the land.

In view of these facts, we determine that the lower court could have rationally found as it did. Neither are we definitely and firmly convinced in reviewing the evidence as a whole that the trial court committed a mistake. See EDLF v. Pangelinan, supra; Marianas Public Land Trust v. Government NMI, supra; Aldan v. Kaipat, supra; and EDLF v. Arriola, supra.

---

[3]The Malites argue that the Determination of Ownership has no relevance to their claim since they were never notified of such determination. We disagree. A mere lack of notice would not be sufficient to attack a Determination of Ownership. See Restatement (Second) of Judgments § 83, comment i (1977).

198

The trial court could rationally have found as it did since the Malites were on notice since at least 1950 that the Sablans were possessing and using the land. Their argument that they relied on Elias Sablan to return their land, especially since he was the godfather of Elias Malite, may be persuasive up to 1968. After the death of Elias Sablan in 1968, it was no longer reasonable for them to rely on such expectation. Their other argument that they assumed that title was still in the Malite name loses strength when they admitted that they learned that title was in the name of Elias Sablan in 1972.

Why did not the Malites file a lawsuit after the death of Elias Sablan and they still saw the Sablans using and controlling the land? Why did they not file a lawsuit in 1972 when they became aware that title was in the name of Elias Sablan? The Malites failed to adequately answer these questions. Their argument that they were periodically checking the government land offices is not persuasive. Once they knew that the Sablans were still on the land after Elias Sablan died, and once they knew that title was in the name of Elias Sablan, they should have filed an action in court. Because the Malites waited until 1988 to make their claim,[4] it was not unreasonable for the trial court to find that an oral transfer was made in the late 1930's.

---

[4]The court notes that the Malites' claim has arisen in this lawsuit only as a result of the original claim filed by the Sablans. If the Sablans' lawsuit had not been filed, the Malites may still be sitting on their claim.

199

## II. The Sablans' Claim

### A. Lot 330

We agree with the trial court's decision quieting title to this lot in Manglona. The trial court held that the Sablans are barred by the doctrine of res judicata. The trial court found that the dismissal with prejudice of the lawsuit filed by Carmen M. Sablan against Manglona in 1981 operated as a bar to Carmen's claim to this lot since it involved a quiet title action. The trial court found that the present claim of the Sablans to this lot stems from Carmen M. Sablan and therefore, the plaintiffs, being in privity with Carmen M. Sablan, are likewise barred. See Stacy v. Simpson, 573 P.2d 1205 (N.M. 1978). Although the case involved both a quiet title claim by Carmen M. Sablan, the plaintiff, and a quiet title counterclaim by Manglona, the defendant, and the stipulation for dismissal was directed at both the main claim and the counterclaim, the lower court nevertheless concluded that the stipulation for dismissal with prejudice operated as an adjudication on the merits that Manglona was the title holder to Lot 330.

The Sablans maintain that the trial court erred in its conclusion. They argue that a dismissal of both the main claim and the counterclaim operated as a "wash" and has no res judicata effect. We disagree.

[6,7] We find it significant that counsel to the parties in the Carmen M. Sablan versus Manglona lawsuit specifically stipulated that the complaint and the counterclaim be dismissed with

200

prejudice. If the parties had intended such a dismissal to later allow them to re-litigate the claim, they could have specifically stated that the dismissal was without prejudice, or merely stipulated to a dismissal without describing it as "with prejudice" or "without prejudice."[5] Counsel for the parties asked for a particular type of dismissal, and they were granted their request. To conclude, as the Sablans would have us do, that a dismissal with prejudice on a claim and counterclaim has the effect of a "wash," would defeat the purpose of the doctrine of res judicata. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4403 (1981). There has to be an end to litigation between parties. Individuals are entitled to their day in court. Individuals are not entitled to have several tries in court on their claim. We hold that a stipulation for dismissal with prejudice of both a claim and counterclaim in a quiet title action is res judicata of the matters covered by the lawsuit. See Burns v. Fincke, 197 F.2d 165 (D.C. Cir. 1952).

We note that the 1981 quiet title action included the matter of the legality and constitutionality of Manglona holding title to land in the Commonwealth. In effect, Carmen M. Sablan was collaterally attacking the 1977 High Court divorce decree, and the reduction of such a decree to a Commonwealth Trial Court decree in 1981. Since she was not a party to the divorce action, she could properly do so. See Restatement (Second) of Judgments § 34(3)

---

[5]Stated differently, the Sablans' argument would have the effect of a dismissal without prejudice, stated in a circuitous manner.

(1982). However, when she dismissed her lawsuit with prejudice, the matter was laid to rest. All those in privity with her, as the Sablans, are likewise barred. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 4448 and 4462 (1981).

We have serious doubts about the legality and constitutionality of the prior court decision in the divorce proceeding awarding Manglona title to land in the Commonwealth.[6] Had Carmen M. Sablan pursued her complaint in the 1981 quiet title action, the matter may have properly been resolved. She decided not to continue with the lawsuit and dismissed it with prejudice. Now, her heirs, the Sablans, wish to pursue the matter. However, it is too late. It is not within our power to change a valid and final court decision.[7]

> A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.

11 C. Wright and A. Miller, Federal Practice and Procedure § 2862, at 198-200 (1973). While it may be our opinion that the divorce decree was in error when the trial court awarded fee simple title to a non-TT citizen and should not have given its imprimatur to

------

[6]Although the Sablans raised the constitutionality of Manglona holding title to land in the Commonwealth, as will be shown later, this is not really an issue in this case.

[7]Although the original divorce decree issued from the Trust Territory High Court in 1977, this was reduced to a Commonwealth Trial Court (now Superior Court) decree in 1981.

such a stipulation by the parties, that divorce decree is not before this court for review. That issue was never appealed by the parties to that action in the High Court. Neither did David M. Sablan appeal the issue when the divorce decree was reduced to a Commonwealth judgment. Furthermore, although this issue was again raised in the 1981 quiet title action between Carmen M. Sablan and Manglona, that action was dismissed with prejudice. Thus, the divorce decree is a final and valid court judgment. The trial court's jurisdiction over the subject matter and parties in the divorce action are not now being challenged. Nor is there any argument being made that the divorce decree was issued in violation of due process of law.

The above reasoning also applies to the Sablans' argument that the <u>nunc pro tunc</u> decree was invalid. The record is not clear as to whether this specific issue was raised in the 1981 quiet title action between Carmen M. Sablan and Manglona. If it was raised, then the above discussion on <u>res judicata</u> applies. But even if it was not, the doctrine of <u>res judicata</u> would still apply. In 18 C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> § 4406, at 45 (1981) "the general rule of res judicata," as described by the United States Supreme Court, is stated as

> "The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound '<u>not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose</u>.' (citation omitted.) The judgment puts an

203

end to the cause of action, which cannot
be brought into litigation between the
parties upon any ground whatever, absent
fraud or some other factor invalidating
the judgment."

(Emphasis added.)

## B. Lot 347

The issue of Manglona's interest in this lot requires a slightly different analysis. We agree with the trial court that the dismissal of the 1981 quiet title action was, in effect, an adjudication that Carmen M. Sablan had no interest in either Lot 330 or Lot 347. Since she had no interest in Lot 347, then only Elias Sablan owned the land. When he died, his interest was transferred immediately to his children. All of his children obtained an undivided one-eighth interest, including David M. Sablan. Manglona obtained David M. Sablan's undivided one-eighth interest through the divorce decree.

Because the Sablans' interests in this lot is derived from their deceased father, Elias Sablan, and because they were never parties to the 1977 divorce action, or its reduction to a Commonwealth court decree in 1981, the general rule of <u>res judicata</u> do not apply to them. However, they lack standing to attack Manglona's interest. <u>See</u> 13 C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> §§ 3531 <u>et seq</u>. (1984). Their interests in the land remain intact. They still have their undivided one-eighth interest. The award to Manglona of David M. Sablan's one-eighth interest in Lot 347 does not affect their own interests.

204

Manglona's one-eighth interest derives from David M. Sablan's share and David M. Sablan is the only person who could attack Manglona's claim. Yet, he is not a party to this lawsuit. But even if he were, he would encounter the defense of res judicata, as discussed above.

### III. RECUSAL

We agree with the ruling of the trial judge refusing to disqualify himself. The motion was untimely. There is nothing in the record that justifies the lateness of the Sablans' motion to recuse the trial judge.

The facts are clear. The complaint in this action was filed April 26, 1988. The Sablans filed a motion for summary judgment on March 9, 1989. After a hearing on this summary judgment motion, but prior to the issuance of a ruling, the Sablans filed their motion to recuse.

The law governing judicial disqualification at the time that the Sablans made the motion were the former 1 CMC § 3109 and Code of Judicial Conduct. The statute was revised under Public Law 6-25, effective May 2, 1989. The Code of Judicial Conduct was revised and the revised version became effective on December 3, 1989.

The general rule is that an appellate court determines questions according to the law prevailing at the time of the appellate decision. Wacangan v. Arriola, 3 CR 556, 560 (D.NMI App.Div. 1988) ("Generally, unless a manifest injustice would result, a reviewing court applies the law as it exists at the time

205

of its decision.); _Arnold v. Knettle_, 460 P.2d 45 (Ariz. Ct. App. 1969); _Denison v. Goforth_, 454 P.2d 218 (Wa. 1969). See _generally_, Annotation, _Change of Law After Decision of Lower Court as Affecting Decision on Appeal_, 111 A.L.R. 1317, 1334 (1937). We, therefore, review the timeliness of appellant's motion to recuse pursuant to our current statute and code.

Our code provides that

> [T]he motion and affidavit shall be filed in sufficient time not to delay any proceedings unless the moving party can show he or she had no reason to previously question the justice's or judge's bias or prejudice or the proceeding was just recently assigned the justice or judge.

Code of Judicial Conduct, Canon 3 D.(c).[8] Our code is clear that a motion to recuse should be made at a time when it would not delay any proceedings, unless it was clearly shown that the basis for disqualification was not previously known, or the proceeding was just recently assigned.

In this case, it is undisputed that the motion to recuse was made after the motion for summary judgment was submitted to the trial judge. A hearing on a motion for summary judgment is a proceeding. _Rooney v. Vermont Investment Corp._, 515 P.2d 297, 308 (Cal. 1973). There is nothing in the record to indicate that counsel for the Sablans learned of the basis for recusal only after the motion for summary judgment was made and heard.

Granting the motion to recuse would have delayed the resolution of the summary judgment motion since it would have to be

---

[8]Our former statute and code had no provision as to when a motion to recuse had to be made.

206

re-argued before a different judge, who would have to first acquainted himself with the case.

## CONCLUSION

The trial court's judgment is AFFIRMED in all respects.

_____
Jose S. Dela Cruz
Chief Justice

_____
Jesus C. Borja
Associate Justice

_____
Larry Hillblom
Special Judge