Filed 6/13/22  Video Symphony v. Hunter CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| VIDEO SYMPHONY, LLC, | B314260 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 18BBCV00240) |
| DANIEL HUNTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Affirmed.

Debt Enforcement Law Group and Michael G. Flanagan for Plaintiff and Appellant.

Aidan Butler for Defendant and Respondent.

_____

Plaintiff and appellant Video Symphony, LLC (Video Symphony) appeals from the trial court's judgment in favor of defendant and respondent Daniel Hunter (Hunter) and the trial

court's order denying Video Symphony's motion for new trial. Video Symphony brought suit seeking to enforce a Stipulation for Enforcement of Judgment (Stipulation) entered into by Hunter and Video Symphony EnterTraining, Inc. (VSE), in which Hunter agreed to make payments on a student loan promissory note in exchange for dismissal of a lawsuit VSE had initiated against him to collect payment on a prior note.[1]

On appeal, Video Symphony contends (1) the Stipulation is enforceable; (2) the trial court misinterpreted the terms of the Stipulation; and (3) the trial court erred in denying Video Symphony's motion for new trial on the basis of procedural irregularities.

The record on appeal does not include the reporter's transcript for trial (or a suitable substitute), and the parties did not request a statement of decision that might have reflected the trial proceedings. Although Video Symphony asserts that a reporter's transcript is not necessary to this court's review, the majority of its arguments rely on facts that could only be gleaned from a reporter's transcript or a suitable substitute.[2]

---

[1] Video Symphony purports to be the assignee of VSE. Although the trial court made no findings on this issue, we will assume for purposes of this opinion, without deciding, that this is the case. Michael Flanagan of Debt Enforcement Law group is the president of Video Symphony and represents Video Symphony on appeal. Flanagan was also the president of VSE. Flanagan negotiated the Stipulation with Hunter and executed the Stipulation on VSE's behalf.

[2] Video Symphony's briefing further hampers this court's review. Its statement of the standard of review in its opening

We conclude that the Stipulation is incomplete, defeating Video Symphony's contention that it is enforceable. The record is inadequate for appellate review as to the remaining issues Video Symphony raises. We affirm the trial court's judgment and order.

## FACTS AND PROCEDURAL HISTORY[3]

### *The Stipulation*

On June 21, 2011, Flanagan, on behalf of VSE as its president, entered into the Stipulation with Hunter. The

---

brief contains no citations to law in support of the review standards that it urges this court to apply. (See Cal. Rules of Court, rule 8.204(a)(1) [points in a brief must include citations to authority].) Video Symphony's statement of facts includes facts not contained in the record; recites only facts that are favorable to itself, although many of those facts are disputed; makes unsupported conclusions; misrepresents statements and rulings of the trial court; and misrepresents the scope of the arguments in Hunter's trial brief. (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112–114 [appellant has a duty to provide a fair statement of facts to facilitate appellate court's review].)

[3] The facts and procedural history reflect only the materials included in the appellate record, which consists of: the trial court case register (docket), the complaint, answer, Video Symphony's notice of motion and motion for entry of judgment, Hunter's opposition to motion for entry of judgment, the trial court's order denying the motion for entry of judgment, the parties' stipulation to continue trial, Video Symphony's trial brief, Hunter's trial brief, a minute order following trial, a notice of entry of

3

preamble to the Stipulation states that on March 24, 2008, Hunter, a student at VSE, signed a promissory note (Original Note) for the principal amount of $17,882.80 in student loans, disbursed on June 26, 2008.  The Original Note provided that Hunter would make monthly payments of $25 for the first 12 months, followed by a total of 50 payments of $494.98 per month. Hunter subsequently went into default on the Original Note, and VSE brought suit in 2010.  At a meeting on May 26, 2011, held at the courthouse prior to a status conference in the case, the parties agreed to enter into the Stipulation and "a new promissory note with [a] revised payment plan."  In consideration for VSE reducing the interest rates for future payments, agreeing to dismiss its case against Hunter with prejudice, and "reducing Hunter's exposure to further attorney and collection fees," Hunter would agree to the terms of the Stipulation.

The Stipulation provided that VSE would maintain the stipulation and not seek to enter it unless there was an uncured default by Hunter.  Under the terms of the Stipulation, default would occur whenever Hunter failed to make payment within 10 days of the due date without VSE's consent.  Uncured default

---

judgment, the trial court's judgment in favor of Hunter, Video Symphony's notice of intention to move for new trial, Video Symphony's motion for new trial, Video Symphony's request for judicial notice, Hunter's opposition to the motion for new trial, Video Symphony's reply to the opposition to the motion for new trial, the trial court's order denying the motion for new trial, a minute order following the hearing on the motion for new trial, Video Symphony's notice of appeal, and Video Symphony's notice designating the record on appeal.  As noted, missing from the record are the reporter's transcripts.

4

would occur whenever Hunter failed to make payment within 30 days of the due date. "The due dates and repayment amounts shall be determined by reference to the Note or by any supplemental writing issued at a later date by VS[E] that accords with the Note, or to a written repayment plan agreed to by both VS[E] and Hunter."

In the event of an uncured default, the Stipulation provided that VSE could enter judgment in any and all courts deemed advisable by VSE and there would be no limit on the number of times VSE could enter a judgment against Hunter, provided that he had not cured the default. "VS[E] in its sole discretion shall have the right to declare a DEFAULT under the terms herein, regardless of any lapse of time from the date of this Stipulation or from the date of a DEFAULT by Hunter." Hunter waived notice of entry of judgment and all rights to a hearing, trial, and appeal. Hunter also waived the statute of limitations.

### The Complaint

In its verified complaint, filed on December 19, 2018, Video Symphony alleged that it is the assignee "in all matters relevant to the matter alleged herein" of VSE, a film and audio vocational college. Hunter attended VSE's Pro Tools Audio Engineering program in 2008 and 2009. He signed the Original Note to cover the costs of the program that were not covered by Federal Student Aid. Hunter failed to make payments on the Original Note. VSE had previously filed suit on October 8, 2010, in Case No. 10C02420, *Video Symphony EnterTraining, Inc. v. Daniel Hunter*. On May 26, 2011, Hunter and VSE entered into the Stipulation and a new promissory note (June 2011 Note). Video

5

Symphony brought the instant lawsuit alleging a single cause of action for breach of the Stipulation. The complaint attached the Stipulation, a note that on its face states, "Date of Note: June 9, 2011" and purports to bear Hunter's signature on June 21, 2011, and a Promissory Note Ledger dated December 18, 2018 (referencing a note dated June 9, 2011), among other documents.

### *Trial Briefs*

On April 28, 2021, Video Symphony filed a trial brief arguing that Hunter breached the Stipulation, which incorporated the June 2011 Note. Video Symphony claimed the Stipulation defined the judgment amount.

Hunter filed a trial brief on May 3, 2021. Hunter represented that the parties reached a tentative agreement at a settlement conference on or around May 26, 2011. The parties signed the Stipulation on June 21, 2011, and VSE's case against Hunter was dismissed. The Stipulation did not set forth the settlement terms. Omissions included the amount to be paid, the timing of payments, and the interest rate. The amount to be paid in the event of an uncured default was defined with reference to the June 2011 Note, as was the term "default." The Stipulation contained various "dubious" provisions waiving Hunter's rights. Hunter did not sign the June 2011 Note. The signatures on the Stipulation and the June 2011 Note plainly differ. Hunter contended that Video Symphony's claim was barred by the four-year statute of limitations applicable to claims for breach of written contracts. He claimed that the Stipulation's terms were, at best, ambiguous, particularly with respect to breach. Hunter argued that the note referred to in the Stipulation was the

6

Original Note from 2008. Finally, Hunter argued that Video Symphony lacked standing to bring suit, as VSE was party to the agreement, not Video Symphony. Video Symphony failed to prove the alleged chain of assignment from VSE to Flanagan to Video Symphony.

### Trial and Judgment

A minute order reflects that the bench trial occurred on the afternoon of May 3, 2021. Trial proceeded via LA Court Connect.[4] Seven joint exhibits were marked for identification and entered into evidence: "Stipulation for Entry of Judgment dated 6/21/2011" (Exhibit 1), "Promissory Note dated 6/21/2011" (Exhibit 2), "Initial Promissory Note dated 3/24/2008" (Exhibit 3), "Promissory Note Ledger dated 12/18/2018" (Exhibit 4), "Asset Transfer Memorialization dated 8/1/2015" (Exhibit 5), "Transfer of Assets Memorialization dated 8/1/2015" (Exhibit 6), and "Bankruptcy Case Order Granting Motion to Approve Compromise Dated 3/5/2021" (Exhibit 7).[5] Michael Flanagan was sworn and testified on behalf of Video Symphony. The court took

---

[4] The minute order notes that the case was called at 9:30 a.m., but that Flanagan failed to appear. Counsel for Hunter informed the court that Flanagan had emailed Hunter's counsel to say Flanagan had failed to sign up for LA Court Connect. The trial court accommodated Flanagan by postponing the matter until the afternoon calendar. A subsequent order of the trial court specifically noted that, in the afternoon, Flanagan appeared by video and Hunter appeared by audio only.

[5] Exhibits 1, 2, 4, 5, and 6 are the same documents that were attached to Video Symphony's complaint.

judicial notice of the status of Flanagan's license to practice law from the California State Bar website. Both sides gave closing arguments, and the court took the matter under submission.

The trial court entered its judgment on May 25, 2021. The judgment is on a standard typewritten form. Checked boxes on the judgment form indicate that: judgment was in favor of Hunter following a court trial; Hunter may seek to recover costs by bill of costs and attorneys' fees by timely motion; and the parties declined to request a statement of decision.

## *Motion for New Trial Filings*

### <u>Motion for New Trial</u>

Video Symphony filed a motion for new trial, Flanagan's declaration in support of the motion, and other exhibits on June 17, 2021. Video Symphony concurrently filed a request that the trial court take judicial notice of an attached Amended Statement of Decision in case No. 19BBCV00624, *Video Symphony, LLC v. Robert Gardner* that the trial court had not signed.

In the motion for new trial, Video Symphony contended that the Stipulation listed the consideration given, provided for entry of judgment against Hunter in the event of uncured default, and "gave wide latitude to VSE in declaring default and filing for a judgment." Hunter had waived notice, the right to trial, and the right to appeal entry of judgment. The Stipulation was binding on the trial court unless contrary to law, court rules, or policy. Because Hunter did not contest the Stipulation on any of these bases, the trial court was bound to enter judgment.

8

Video Symphony argued that the June 2011 Note was referenced in the Stipulation. Even though the June 2011 Note was central to determining the amount of damages, however, it was not necessary for the entry of judgment. The Stipulation alone was the operative legal document. Hunter did not contest that he signed the Stipulation. Whether Hunter signed the Stipulation, the June 2011 Note was immaterial—an unsigned attachment to the Stipulation could be used to specify a payment schedule and determine the balance of Hunter's debt. The trial court was obligated to resolve any ambiguities in the Stipulation pursuant to the court's "implicit" holding in *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351 (*Rooney*). *Rooney* also dictated that the trial court enter judgment without determining whether Hunter had defaulted or determining the amount of the judgment.

Video Symphony contended that irregularities in the proceedings as well as accident or surprise prevented a fair trial. These included the trial court's disregard of Video Symphony's efforts to file a Motion for Summary Judgment, Hunter's delinquent trial brief, and Hunter's telephonic appearance, without video, at trial.

Finally, Video Symphony claimed that the evidence was insufficient to support the judgment because Hunter's purported testimony was insufficient and did not address any of his defenses. It alleged that Hunter's statute of limitations argument was without merit because 24 of the payments due under the June 2011 Note fell within the statutory period. Hunter's challenge to Video Symphony's standing also lacked merit because he failed to proffer evidence to rebut VSE's assignment to Video Symphony. Flanagan's status with the

9

California State Bar was immaterial. Other defenses suggested post-trial lacked merit.

**Opposition to Motion for New Trial**

Hunter filed an opposition to the motion for new trial and declaration of Hunter's attorney Aiden Butler on June 23, 2021. The opposition factually distinguished the instant case from *Rooney, supra,* 10 Cal.3d 351. Hunter contended that even if the irregularities cited by Video Symphony occurred, it could not establish prejudice because Video Symphony lacked standing to bring the action, and Flanagan engaged in the unauthorized practice of law when he negotiated the Stipulation with Hunter. Video Symphony had ample time to file a motion for summary judgment, as the verified answer was filed on October 19, 2019, and no discovery was propounded. Video Symphony did not explain why it delayed attempting to schedule its proposed motion for summary judgment until January 2021. The trial court's decision to decline to sign the parties' stipulation to continue trial until mid-March did not prejudice Video Symphony because trial did not take place until May. Video Symphony did not demonstrate how the trial was less effective than its motion for summary judgment would have been. It did not show that the trial court abused its discretion.

Video Symphony could not complain that Hunter's trial brief was delinquent, as its own trial brief was filed two court days earlier and was also delinquent. Video Symphony did not demonstrate the trial court relied on Hunter's trial brief, and it did not object to the late filing.

10

Video Symphony did not contend that it objected to Hunter's telephonic appearance, and did not question his identity at trial. Video Symphony did not show how the telephonic appearance prejudiced it. Flanagan questioned Hunter regarding his signature meticulously at trial.

Video Symphony bore the burden of persuasion; it was not Hunter's responsibility—and it would have been improper—to argue his defenses in testimony.

The opposition additionally argued that Flanagan was not authorized to practice law when he negotiated the Stipulation. At trial, Flanagan admitted that his bar license was not continuously active and that he had no reason to doubt the accuracy of the California State Bar's record of his status. He stated that he did not object to the court taking judicial notice of the records. Flanagan admitted it was likely that he signed VSE's complaint against Hunter in 2010 and appeared on VSE's behalf in at least one courtroom proceeding. Business and Professions Code section 6125 prohibits persons who do not have an active state bar license from practicing law. Practicing with an inactive bar license is a misdemeanor under Business and Professions Code section 6126. Flanagan held himself out as an attorney to the trial court and Hunter. As a result of this conduct, the Stipulation was a contract contrary to policy of law pursuant to Civil Code section 1667, et seq.

**Reply to Opposition**

On July 1, 2021, Video Symphony filed its reply to the opposition. It argued that the facts presented at trial did not support the judgment, the June 2011 Note did not need to be

11

executed for the Stipulation to be effective, numerous installment payments were due within the statute of limitations, and Hunter did not present evidence that he made payments. The fact that Flanagan did not pay the correct amount on his California State Bar fees did not render him unauthorized to practice law or make the Stipulation unenforceable, and Hunter failed to present facts to rebut Video Symphony's standing.

### *Trial Court's Ruling on Video Symphony's Motion for New Trial*

A July 9, 2021 minute order reflects that a hearing on Video Symphony's motion for new trial was held that day. The court read and considered Video Symphony's moving papers and Hunter's opposition. Counsel for both parties submitted on the court's tentative ruling through the Court Reservation System. The court adopted its tentative ruling and filed it as an Order re: Motion for New Trial.

In its ruling, the court gave the following reasons for denial of Video Symphony's motion: First, whether considered alone or in conjunction with the June 2011 Note, the Stipulation was insufficient. The Stipulation did not set forth any terms under which the court could calculate or define the terms of a judgment.

Second, the Stipulation contained many one-sided waivers of Hunter's procedural rights. Enforcement of this one-sided Stipulation would be a violation of public policy. Records of the California State Bar, of which the court took judicial notice,[6]

---

[6] The court's order states that Flanagan indicated that he did not object to the court taking judicial notice of the state bar records.

demonstrated that Flanagan, although listed as the attorney of record in VSE's 2010 case, was not licensed to practice law at that time. He appeared in court on behalf of VSE, and met with Hunter in the Glendale courthouse where the parties executed the Stipulation. Flanagan's unauthorized practice of law was not a mere technicality. Hunter, who was not an attorney and unrepresented, was led to believe VSE had hired an attorney to collect on the alleged obligation and that, by signing the Stipulation, Hunter would "reduc[e] [his] exposure to further attorney and collection fees," as stated in the Stipulation. Hunter also agreed to pay Flanagan a legal fee for preparing the Stipulation in the event of default. The trial court wrote: "Mr. Flanagan used the Glendale Courthouse as a stage on which to pretend to be a licensed attorney with the result that Mr. Hunter was induced to sign the one-sided stipulation."

Third, the court found by a preponderance of the evidence that the June 2011 Note was not genuine and that Hunter's signature had been forged. Hunter testified that the signature was not his. The court noted numerous inconsistencies between the signature on the June 2011 Note and other exemplars of Hunter's signature in the record. The court found Flanagan's testimony not credible.

Fourth, the trial court found that the alleged procedural irregularities and accident or surprise cited by Video Symphony had no effect on any substantive right of the parties or the result in the case. Video Symphony was not prevented from filing a motion for summary judgment. The case had been pending for two and a half years, and if summary judgment was appropriate, Video Symphony had ample time to so move. The court would have denied summary judgment in any event, as there was an

13

obvious question of fact regarding whether Hunter signed the June 2011 Note. The timing of the parties' trial briefs had no appreciable effect on the court's decision. The court reviewed the briefs at the same time, and the parties repeated the arguments in their trial briefs orally at trial. Both parties appeared remotely according to court policy in the ongoing pandemic. The court permitted the video conference and telephonic appearances, and neither party had objected. The court also noted that Hunter's counsel permitted Flanagan's remote appearance; if he had not, Flanagan would have failed to appear and judgment would have been entered against Video Symphony.

Finally, the court found Video Symphony's argument that there was insufficient evidence to justify the judgment without merit. Video Symphony complained that Hunter's defenses were not supported by evidence at trial, but the burden was on Video Symphony to prove the claims in the complaint. The court did not reach Hunter's affirmative defenses because Video Symphony failed to make a prima facie case.

Video Symphony timely appealed from the judgment and the order denying its motion for new trial.

## DISCUSSION

### *The Stipulation is Not Enforceable Because It is Incomplete*

Video Symphony argues that the Stipulation was enforceable and that the trial court erred by failing to correctly interpret its terms at trial. Video Symphony contends that the absence of the reporter's transcript of the trial and a statement of

14

the trial court's decision is not fatal to its claims because the Stipulation is complete on its face.  The contentions are without merit.

### Legal Principles

*Inadequate Record*

""A judgment or order of the lower court is *presumed correct*."" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  An appellant bears the burden of overcoming this presumption by affirmatively showing error on an adequate record. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141.)  Under California Rules of Court, rule 8.120(b), "[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137."  When there is an inadequate record, we must presume any matters that could have been presented to support the trial court's order were in fact presented, and may affirm the trial court's determination on that basis.  (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127 (*Bennet*).)  An appellant's failure to present an adequate record will result in the issue being resolved against appellant.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 (*Maria P.*)  "[I]n the absence of a required reporter's transcript and other [relevant] documents, we presume

the judgment is correct." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039 (*Stasz*).)

"'A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.' [Citation.]" (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.) "It is axiomatic it is the appellant's responsibility to provide an adequate record on appeal. (See *Maria P.*[, *supra,*] 43 Cal.3d [at pp.] 1295–1296 [to overcome presumption on appeal that an appealed judgment or order is presumed correct, appellant must provide adequate record demonstrating error]; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [burden on appellant to provide accurate record on appeal to demonstrate error; failure to do so 'precludes adequate review and results in affirmance of the trial court's determination']; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) 4:43, p. 4–10.1 [appellate record inadequate when it 'appears to show *any* need for *speculation or inference* in determining whether error occurred'].)" (*Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins.* Co. (2006) 136 Cal.App.4th 999, 1004, fn. 1.)

### *Interpretation of the Stipulation*

A stipulation or consent judgment is a contract and is interpreted under the normal rules of contract interpretation. (*Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 222.) "When a

written stipulation sets forth all the terms of a judgment agreed to by the parties, the filing of the stipulation normally provides a sufficient basis for entry of the judgment upon the ex parte application of either party. [Citation.] But if the stipulation *omits any essential element* of a complete judgment, a judgment cannot be entered until the missing element or elements are established by proof or by further stipulation. [Citations.] Similarly, if a material term of the stipulation is ambiguous, judgment cannot be entered until such ambiguity is appropriately resolved. [Citation.]" (*Rooney*, *supra*, 10 Cal.3d at pp. 368–369.) "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481 (*Cal. Lettuce Growers*).)

"Absent a conflict in the evidence, the interpretation of the contract remains a matter of law." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1134; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*).) "[W]hen, . . . ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, [however,] that credibility determination and the interpretation of the contract are questions of fact." (*City of Hope*, *supra*, 43 Cal.4th at p. 395.)

### Analysis

As Hunter argued in his trial brief, the Stipulation is incomplete on its face. The Stipulation does not state the total amount due, the number of payments to be made, when

17

payments are due, or the interest rate on payments. Moreover, the language of the Stipulation demonstrates that it was not intended to be read in isolation. The Stipulation provides that "[t]he due dates and repayment amounts shall be determined by reference to the Note or by any supplemental writing issued at a later date by [VSE] that accords with the Note, or to a written repayment plan agreed to by both [VSE] and Hunter." "Default" and "uncured default," which trigger entry of the Stipulation, are defined by reference to the terms of the Note.[7] The Stipulation is "merely an agreement to agree and therefore *nudum pactum* until [essential terms are] fixed or agreed upon." (*Cal. Lettuce Growers*, *supra*, 45 Cal.2d at p. 481.)

Although unexpressed provisions of a contract may be inferred from extrinsic evidence (*Cal. Lettuce Growers*, *supra*, 45 Cal.2d at p. 482), here, the parties did not agree that the June 2011 Note, which Video Symphony expressly relied on as the document referenced and integrated in the Stipulation, was genuine. Hunter disputed the authenticity of the June 2011 Note in his trial brief, and claimed not to have signed it. The trial court considered the evidence and expressly found that Hunter's signature had been forged. The determination of the credibility of extrinsic evidence is a question of fact that requires review of

---

[7] Video Symphony claims that the preamble to the Stipulation contains the amount of the initial debt and other information pertinent to the Original Note, and indicates that the new note would lower the interest rate and revise the payment plan. This information is not sufficient to permit a court to determine the interest rate, amount of payments, or payment dates on the purported new note, or to determine what constitutes "default" or "uncured default."

the reporter's transcript. (See *City of Hope, supra*, 43 Cal.4th at p. 395.) In the absence of a reporter's transcript, we presume that any evidence that could have been presented to support the trial court's order was presented, and we affirm the trial court's determination that the Stipulation was insufficient because material terms were ambiguous or omitted.[8] (*Bennett, supra,* 19 Cal.App.4th at p. 127.)

We are not persuaded by Video Symphony's argument that the fact that the Stipulation refers to the parties executing a new note in connection with the Stipulation definitively proves that such a note actually exists. Regardless, the mere existence of a note is irrelevant. No genuine note was produced, so the terms the purported note contains cannot be ascertained or incorporated into the Stipulation. It is also irrelevant that the Stipulation "could have included a payment schedule within its four corners, or incorporated one attached as an addendum." The fact is that the Stipulation *does not* contain multiple material terms and Video Symphony *did not* present any other genuine document that could have supplied or elucidated those terms. Finally, it was not Hunter's burden to produce an alternative note—as plaintiff, Video Symphony bears the burden of proof.

Nor can the ledger admitted into evidence as Exhibit 4 substitute for a genuine note. The Stipulation provides: "The due dates and repayment amounts shall be determined by reference to the Note or by any supplemental writing issued at a later date

_____

[8] Video Symphony also argues that the trial court erred in finding that the Stipulation was void as a violation of public policy because Flanagan engaged in the unauthorized practice of law when negotiating with Hunter. Given our conclusion that the Stipulation was not complete, we need not reach this issue.

19

by VS[E] that accords with the Note, or to a written repayment plan agreed to by both VS[E] and Hunter." Video Symphony claims that the ledger constitutes a "supplemental writing issued at a later date by VS[E] that accords with the Note." Absent a genuine note, however, it is impossible to discern whether the ledger "accords with the Note."

We also reject Video Symphony's argument that the trial court had a duty to supply terms omitted from the Stipulation, regardless of whether a legitimate basis existed for determining what those terms were. Contrary to Video Symphony's assertion, *Southern Cal. Gas Co. v. Joseph W. Wolfskill Co.* (1963) 212 Cal.App.2d 882 (*Southern Cal. Gas Co.*), does not state "[I]f the substance of a stipulation *is to be incorporated* in a judgment but its language is ambiguous, it is the court's duty to interpret the language to ascertain the intent of the parties." (Italics added.) It states: "When the subject matter of a stipulation *is incorporated* in a judgment it is the duty of the court to carry out the intent of the parties as expressed therein and, if the language used by them is ambiguous, to ascertain that intent in accord with established principles." (*Southern Cal. Gas Co.*, *supra*, at p. 888, italics added.) The difference is significant. The principle set forth in *Southern Cal. Gas Co.* presupposes that the stipulation in question is genuine, has been incorporated into a judgment, and contains terms that can be ascertained. Here, conflicting evidence was presented regarding whether the proffered June 2011 Note was incorporated into the Stipulation— including conflicting testimony at trial, for which we have no record on appeal to evaluate. In the absence of an adequate record we presume that the trial court's judgment is correct.

(*Bennett, supra,* 19 Cal.App.4th at p. 127.) *Southern Cal. Gas Co.* does not apply.

Video Symphony's assertion that "The California Supreme Court in *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 356 propounded that where a written stipulation omits any essential element of a complete judgment, the trial court's role is to fill in the blanks left by any ambiguous or material term <u>unless it determines the promisor is not in default</u>" is a mischaracterization of the *Rooney* court's holding. *Rooney* holds that a stipulation may not be entered if its terms are ambiguous or omitted. (*Rooney*, *supra*, 10 Cal.3d at pp. 368–369.) *Rooney* does not place an affirmative duty on the courts to supply the missing terms in a contract. In fact, the law is contrary to Video Symphony's position: "It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties." (*Harris v. Spinali Auto Sales, Inc*. (1962) 202 Cal.App.2d 215, 219.)

Finally, the assertion that Hunter owed some amount of debt pursuant to the Stipulation does not aid Video Symphony. As Hunter argued in his trial brief, the applicable statute of limitations for breach of contract is four years. (Code Civ. Proc., § 337.) The parties entered into the Stipulation on June 21, 2011. The instant suit was filed more than four years later on December 9, 2018. For Video Symphony to establish it brought its action within the statute of limitations, in part or in whole, it had to show Hunter had payment amounts due within the four-year period prior to filing. As we have explained, without a genuine note establishing the payment amounts and due dates, the record is not sufficient to permit such determinations.

## *The Trial Court Did Not Abuse Its Discretion by Denying Video Symphony's Motion for New Trial*

### Legal Principles

The court may order a new trial on all or part of the issues upon motion of the aggrieved party upon a showing that the ground for the motion materially affected the rights of the moving party.  (Code Civ. Proc., § 657.)  A motion for new trial may be brought to challenge a judgment, whether based upon fact or law.  (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 90.)

"The right to a new trial is purely statutory, and a motion for a new trial can be granted only on one of the grounds enumerated in the statute.  [Citation.]" (*Fomco, Inc. v. Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166.)  Because a new trial motion is a creature of statute, "the procedural steps prescribed by law for making and determining such a motion are mandatory and must be strictly followed [citations]." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 118.)

A motion for new trial must be based upon one of the bases enumerated in Code of Civil Procedure section 657.  The statute identifies "seven grounds for such a motion: (1) 'Irregularity in the proceedings'; (2) 'Misconduct of the jury'; (3) 'Accident or surprise'; (4) 'Newly discovered evidence'; (5) 'Excessive or inadequate damages'; (6) 'Insufficiency of the evidence'; and (7) 'Error in law.'" (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.)

## Analysis

Video Symphony contends that the trial court abused its discretion by denying its motion for new trial on the sole basis that irregularities in the proceedings precluded a fair trial under Code of Civil Procedure section 657, subdivision (1). Specifically, Video Symphony complains that (1) Hunter's appearance by telephone prevented it from verifying Hunter's identity and effectively cross-examining him, and prevented the trial court from properly assessing his credibility; (2) the trial court's erroneous conclusions and inappropriate comments regarding Flanagan's behavior deprived Video Symphony of a fair trial; and (3) the trial court's erroneous conclusion that Hunter was credible deprived Video Symphony of a fair trial. We reject Video Symphony's arguments.

"'[I]rregularity in the proceedings' is a catchall phrase referring to any act that (1) violates the right of a party to a fair trial and (2) which a party 'cannot fully present by exceptions taken during the progress of the trial, and which must therefore appear by affidavits.' [Citations.]" (*Montoya v. Barragan* (2013) 220 Cal.App.4th 1215, 1229–1230.) In all cases, the party requesting a new trial must show the misconduct was prejudicial to his or her substantial rights and ability to have a fair trial. (*Gray v. Robinson* (1939) 33 Cal.App.2d 177, 182.) "[W]hether, under all the circumstances, an irregularity has materially affected substantial rights and prevented a fair trial is addressed to the discretion of the trial court which, having heard and seen the witness[es] and having knowledge of circumstances which may not be produced in the record, is in better position than the appellate court to determine the effect." (*Ibid.*)

23

In fact, none of the issues Video Symphony raises qualifies as a matter of "irregularity in the proceedings" to be presented by affidavit; all are issues that could have been called to the attention of the trial court at trial when the purported irregularity occurred.[9]  Rulings could have been readily obtained from the court had Video Symphony timely objected; Video Symphony cannot now complain.  (See *Gibbons v. Los Angeles Biltmore Hotel* (1963) 217 Cal.App.2d 782, 791.)

With respect to Video Symphony's contention that it was prejudiced by Hunter's telephonic appearance, the trial court ruled that Video Symphony failed to object and had suffered no prejudice.  As we cannot review the reporter's transcript of the trial, we presume that the court's ruling is correct as to both the failure to object and the lack of prejudice.[10]  (*Stasz, supra*, 190 Cal.App.4th at p. 1039.)  Hunter's telephonic appearance was not an irregularity in the proceedings that precluded a fair trial.

Video Symphony argues that the trial court's "numerous errant and rather caustic conclusions about the 'unlicensed attorney' who happened to represent [Video Symphony] at the

---

[9] With respect to Video Symphony's second argument regarding the court's comments, the court issued its tentative decision prior to ruling on the motion for new trial.  Video Symphony did not object to the comments in the ruling.  It submitted on the tentative.

[10] Video Symphony's disparaging remarks regarding the trial court's "ill-conceived foray into graphology" and its "questionable at best" handwriting analysis skills are not well-taken and in no way facilitate this court's review of its claims.  The same is true of similar comments on the trial court's assessment of Flanagan and Hunter's respective credibility.

2021 trial clouded its ability to ensure a fair trial." Video Symphony refers to two statements in the trial court's order denying the motion for new trial. In the first instance, the trial court commented that VSE "was *graciously* agreeing to 'reduc[e] Hunter's exposure to further attorney and collection fees.'" (Italics added.) In the second, the trial court noted that the Stipulation was "one-sided". The trial court's order denying the motion for new trial indicates that, although Flanagan was not authorized to practice law at the time, he negotiated the Stipulation with Hunter under the pretense that he was an attorney and that settling the matter with VSE would save Hunter the expense of VSE's attorney fees. The Stipulation contained numerous provisions that benefitted VSE to Hunter's detriment, including that there would be no jurisdictional limit on VSE's enforcement of the Stipulation, there would be no limit on the number of times VSE could seek to enforce the Stipulation if default was not cured, VSE would have full discretion to declare default, and that Hunter would waive his right to notice of judgment, and have no right to trial or appeal concerning the judgment.

Video Symphony has not provided us with the reporter's transcript of the trial, so we presume that the trial court's conclusions on the matter were supported and correct. (*Stasz*, *supra*, 190 Cal.App.4th at p. 1039.) Considering these findings, the court's statement that the Stipulation was one-sided is accurate. Although the court may have been facetious in its use of the word "graciously," the comment was a mild remark in light of Flanagan's actions and the Stipulation's terms. It does not evince a bias that causes us concern. Moreover, Video Symphony cannot establish prejudice. The Stipulation is incomplete and

could not be entered even if the trial court had not made the complained-of comments.

Finally, Video Symphony's assertion that Hunter was not credible is more accurately classified as a claim of insufficiency of the evidence. (Code Civ. Proc., § 657, subd. (6).) Even if so classified, the claim does not ask us to review the sufficiency of the evidence (which would require a reporter's transcript that we do not possess), but rather to assess credibility and re-weigh the evidence, neither of which is a proper inquiry on appeal. (See *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270 ["'We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence'"].) The contention necessarily fails.

## DISPOSITION

The trial court's judgment and order denying Plaintiff and Appellant Video Symphony LLC's motion for new trial are affirmed. Defendant and Respondent Daniel Hunter is awarded costs on appeal.


MOOR, J.


I concur:


RUBIN, P. J.


26

Video Symphony, LLC v. Daniel Hunter
B314260


BAKER, J., Concurring


      I agree the judgment must be affirmed.  The inadequate appellate record presented by appellant Video Symphony, LLC precludes an affirmative showing of error on all—not just a majority—of the arguments appellant raises.  (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186-187.)  We need say no more than that.



                  BAKER, J.